Mark S. Eisen – SBN 289009
meisen@edelson.com
EDELSON PC
555 West Fifth Street, 31st Floor
Los Angeles, California 90013
Tel: 213.533.4100
Fax: 213.947.4251

Jay Edelson (Admitted *Pro Hac Vice*)
jedelson@edelson.com
Rafey S. Balabanian (Admitted *Pro Hac Vice*)
rbalabanian@edelson.com
Ari J. Scharg (Admitted *Pro Hac Vice*)
ascharg@edelson.com
J. Dominick Larry (Admitted *Pro Hac Vice*)
nlarry@edelson.com
EDELSON PC
350 North LaSalle Street, Suite 1300
Chicago, Illinois 60654
Tel: 312.589.6370
Fax: 312.589.6378

Laurence D. King – SBN 206423
lking@kaplanfox.com
Linda M. Fong – SBN 124232
lfong@kaplanfox.com
KAPLAN FOX & KILSHEIMER LLP
350 Sansome Street, Suite 400
San Francisco, California 94104
Tel: 415.772.4700

*Counsel for Plaintiff and the Putative Class*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF CALIFORNIA**
**SAN JOSE DIVISION**

| | |
|---|---|
| | Case No. 12-cv-03088-EJD |
| IN RE LINKEDIN USER PRIVACY LITIGATION | **PLAINTIFF'S MOTION AND MEMORANDUM IN SUPPORT OF PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT** |
| | Date: January 16, 2015 |
| | Time: 9:00 a.m. |
| | Judge: Hon. Edward J. Davila |
| | Action Filed: June 15, 2012 |

## NOTICE OF MOTION

NOTICE IS HEREBY GIVEN that on January 16, 2015 at 9:00 a.m., or at such other time as may be set by the Court, Plaintiff Khalilah Wright will move the Court, pursuant to Federal Rule of Civil Procedure 23(e), to grant preliminary approval of the class action settlement reached by Plaintiff and Defendant LinkedIn Corporation and attached hereto as Exhibit 1, in Courtroom 4, 5th Floor, 280 South 1st Street, San Jose, California 95113, before the Honorable Edward Davila.

The Motion is based on this Notice of Motion, the Memorandum of Points and Authorities, oral argument of counsel, all documents in the record, the Northern District of California's Procedural Guidance for Class Action Settlements, and any other matter that may be submitted at the hearing.

## STATEMENT OF ISSUES PRESENTED

The issues presented by this Motion are:

1.  Does the proposed class meet the requirements for certification under Rule 23(a) and (b)(3)?

2.  Should Plaintiff be appointed as class representative and her counsel as class counsel?

3.  Is the proposed settlement fair, adequate, and reasonable?

4.  Does the proposed notice plan satisfy the requirements of Rule 23 and due process?

Dated: August 15, 2014

Respectfully Submitted,

KHALILAH WRIGHT, individually and on behalf of the Class of similarly situated individuals,


/s/ *Ari J. Scharg*
_____


Mark S. Eisen – SBN 289009
meisen@edelson.com
EDELSON PC
555 West Fifth Street, 31st Floor
Los Angeles, California 90013
Tel: 213.533.4100
Fax: 213.947.4251

Jay Edelson (Admitted *Pro Hac Vice*)
jedelson@edelson.com
Rafey S. Balabanian (Admitted *Pro Hac Vice*)
rbalabanian@edelson.com
Ari J. Scharg (Admitted *Pro Hac Vice*)
ascharg@edelson.com
J. Dominick Larry (Admitted *Pro Hac Vice*)
nlarry@edelson.com
EDELSON PC
350 North LaSalle Street, Suite 1300
Chicago, Illinois 60654
Tel: 312.589.6370
Fax: 312.589.6378

Laurence D. King – SBN 206423
lking@kaplanfox.com
Linda M. Fong – SBN 124232
lfong@kaplanfox.com
KAPLAN FOX & KILSHEIMER LLP
350 Sansome Street, Suite 400
San Francisco, California 94104
Tel: 415.772.4700

## Table of Contents

I.      INTRODUCTION .................................................................................................1

II.     BACKGROUND ...................................................................................................2

    A.  Plaintiff's Allegations and the Litigation History .........................................2

    B.  Settlement Discussions, Mediation, and Resolution ....................................4

III.    TERMS OF THE SETTLEMENT AGREEMENT .........................................5

    A.  Class Definition .............................................................................................5

    B.  Monetary Relief ............................................................................................5

    C.  Prospective Relief .........................................................................................6

    D.  Release ...........................................................................................................6

    E.  Notice and Settlement Administration Expenses ..........................................6

    F.  Incentive Award ............................................................................................7

    G.  Attorneys' Fees and Expenses ......................................................................7

IV.     THE PROPOSED SETTLEMENT CLASS SHOULD BE CERTIFIED .....7

    A.  The Requirement of Numerosity Is Satisfied ...............................................8

    B.  The Requirement of Commonality Is Satisfied ............................................8

    C.  The Requirement of Typicality Is Satisfied ................................................10

    D.  The Requirement of Adequate Representation Is Satisfied .........................10

    E.  The Proposed Settlement Class Meets the Requirements of Rule 23(b)(3) ..........11

        1.   Common Questions of Law and Fact Predominate ...................................12

        2.   This Class Action Is the Superior Method of Adjudication .....................13

V.      THE COURT SHOULD AFFIRM THE APPOINTMENT OF
    CLASS COUNSEL ...........................................................................................14

VI.     THE PROPOSED SETTLEMENT WARRANTS PRELIMINARY
    APPROVAL .......................................................................................................15

VII.    THE PROPOSED NOTICE PLAN ................................................................19

VIII.   CONCLUSION ..................................................................................................21

# **Table of Authorities**

<u>United States Supreme Court Cases</u>

*Amchem Prods. Inc. v. Windsor,*
    521 U.S. 591 (1997) ...............................................................................7, 12, 13

*Eisen v. Carlisle & Jacquelin,*
    417 U.S. 156 (1974) ....................................................................................... 19

*Wal-Mart Stores, Inc. v. Dukes,*
    131 S. Ct. 2541 (2011).................................................................................7, 8, 11

<u>United States Circuit Court of Appeals Cases</u>

*Hanlon v. Chrysler Corp.,*
    150 F.3d 1011 (9th Cir. 1998) ...................................................................8, 10, 12

*Hanon v. Dataproducts Corp.,*
    976 F.2d 497 (9th Cir. 1992) ........................................................................... 10

*In re Mego Fin. Corp. Sec. Litig.,*
    213 F.3d 454 (9th Cir. 2000) ........................................................................... 18

*In re Syncor ERISA Litig.,*
    516 F.3d 1095 (9th Cir. 2008) ......................................................................... 15

*Lane v. Facebook, Inc.,*
    696 F.3d 811 (9th Cir. 2012) *cert. denied,* 134 S. Ct. 8 .................................1, 5, 19

*Parra v. Bashas', Inc.,*
    536 F.3d 975 (9th Cir. 2008) .............................................................................9

*Pierce v. Cnty. of Orange,*
    526 F.3d 1190 (9th Cir. 2008) ......................................................................... 12

*Valentino v. Carter-Wallace, Inc.,*
    97 F.3d 1227 (9th Cir. 1996) ........................................................................... 13

*Wolin v. Jaguar Land Rover N. Am. LLC,*
    617 F.3d 1168 (9th Cir. 2010) .....................................................................10, 13

*Yokoyama v. Midland Nat'l Life Ins. Co.,*
    594 F.3d 1087 (9th Cir. 2010) ......................................................................... 13

<u>United States District Court Cases</u>

*Algee v. Nordstrom, Inc.,*
    No. C 11-301 CW MEJ, 2012 WL 1575314 (N.D. Cal. May 3, 2012).........................8

*Beringer v. Certegy Check Services, Inc.,*
    No. 07-cv-01657 (M.D. Fla. Sept. 3, 2008)............................................................ 19

*Boring v. Bed Bath & Beyond of Cal. LLC,*
    No. 12-cv-05259-JST, 2013 WL 6145706 (N.D. Cal. Nov. 21, 2013) ...............15, 16

*Chamberlan v. Ford Motor Co.*,
    223 F.R.D. 524 (N.D. Cal. 2004) ............................................................................ 14

*Ching v. Siemens Indus., Inc.*,
    No. C 11-4838 MEJ, 2013 WL 6200190 (N.D. Cal. Nov. 26, 2013) ................... 15, 17

*Cordy v. USS-Posco Indus.*,
    No. 12-cv-00553-JST, 2014 WL 212587 (N.D. Cal. Jan. 17, 2014) .................... 15, 17

*Estrella v. Freedom Fin. Network, LLC*,
    No. 09-cv-3156, 2010 WL 2231790 (N.D. Cal. June 2, 2010) .............................. 9, 10

*Freeman v. ABC Legal Servs., Inc.*,
    877 F. Supp. 2d 919 (N.D. Cal. 2012) .................................................................... 18

*Greenwood v. Compucredit Corp.*,
    No. 08-cv-4878, 2010 WL 4807095 (N.D. Cal. Nov. 19, 2010) ............................ 9, 12

*Harris v. comScore, Inc.*,
    292 F.R.D. 579 (N.D. Ill. 2013) ............................................................................. 9

*Harris v. comScore, Inc.*,
    No. 11-cv-5807 (N.D. Ill.) ..................................................................................... 11

*Harris v. Marketing Corp.*,
    No. 08-cv-5198, 2011 WL 1627973 (N.D. Cal. Apr. 29, 2011) ............................ 16

*Holloway v. Full Spectrum Lending*,
    No. 06-cv-5975, 2007 WL 7698843 (C.D. Cal. June 26, 2007) ............................ 13

*Hopkins v. Stryker Sales Corp.*,
    No. 5:11-CV-02786-LHK, 2012 WL 1715091 (N.D. Cal. May 14, 2012) ................. 8

*In re Google Buzz Privacy Litig.*,
    No. C 10-00672 JW, 2011 WL 7460099 (N.D. Cal. June 2, 2011) .......................... 1

*In re Tableware Antitrust Litig.*,
    484 F. Supp. 2d 1078 (N.D. Cal. 2007) ............................................................ 15, 17

*Kagan v. Wachovia Sec., L.L.C.*,
    No. 09-5337 SC, 2012 WL 1109987 (N.D. Cal. Apr. 2, 2012) ................................ 7

*Kazemi v. Payless Shoesource, Inc.*,
    No. 09-cv-5142 (N.D. Cal.) .................................................................................... 19

*Moshogiannis v. Sec. Consultants Grp., Inc.*,
    No. 5:10-CV-05971 EJD, 2012 WL 423860 (N.D. Cal. Feb. 8, 2012) ................. 8, 16

*Resnick v. Avmed*,
    No. 10-cv-24513 (S.D. Fla.) ........................................................................ 11, 14, 19

*Standiford v. Palm*,
    No. 5:09-cv-05719-LHK (N.D. Cal.) ...................................................................... 11

*Tijero v. Aaron Bros., Inc.*,
   No. C 10-01089-SBA, 2013 WL 6700102 (N.D. Cal. Dec. 19, 2013)........................17

*Vandervort v. Balboa Capital Corp.*,
   287 F.R.D. 554 (C.D. Cal. 2012)...........................................................13

*Villegas v. J.P. Morgan Chase & Co.*,
   No. 09-cv-00261, 2012 WL 5878390 (N.D. Cal. Nov. 21, 2012)........................17, 19

*Williams v. Costco Wholesale Corp.*,
   No. 02-cv-2003, 2010 WL 761122 (S.D. Cal. Mar. 4, 2010)............................16

Other Judicial Authority

*In re Vioxx Class Cases*,
   103 Cal. Rptr. 3d 83 (Cal. Ct. App. 2009)...............................................18

*Tabata v. Charleston Area Medical Center, Inc.*,
   759 S.E.2d 459 (W. Va. 2014) ..............................................................9

Statutes

28 U.S.C. § 1715 ...................................................................................20

Cal. Bus & Prof. Code § 17200 ...................................................................2

Cal. Civ. Code § 1750 ..............................................................................2

Fed. R. Civ. P. 8....................................................................................4

Fed. R. Civ. P. 9....................................................................................4

Fed. R. Civ. P. 23.............................................................................*passim*

Miscellaneous

Center for Democracy and Tech.,
   *About CDT*, https://cdt.org/about/ (last visited Aug. 7, 2014).......................6

Center for Democracy and Tech.,
   *Consumer Privacy*, https://cdt.org/issue/consumer-privacy/
   (last visited Aug. 7, 2014) ...................................................................6

Center for Democracy and Tech.,
   *Cybersecurity*, https://cdt.org/issue/security-surveillance/cybersecurity-2/
   (last visited Aug. 7, 2014)....................................................................6

CyLab Usable Privacy and Sec. Lab.,
   http://cups.cs.cmu.edu (last visited Aug. 7, 2014)......................................6

Herbert Newberg & Alba Conte,
   Newberg on Class Actions (4th ed. 2002).............................................15, 20

Manual for Complex Litigation (4th ed. 2004) .........................................7, 15

World Privacy Forum,
    www.worldprivacyforum.org (last visited Aug. 7, 2014) .............................................6

## I.      INTRODUCTION

Plaintiff Khalilah Wright ("Plaintiff") brings suit on behalf of a putative class that were injured as a result of Defendant LinkedIn's alleged misrepresentations in its privacy policy about the sufficiency of its data protection. After narrowing the legal issues through the briefing of two motions to dismiss, the parties decided to attempt to reach a resolution of this matter through private mediation with John B. Bates, Esq. of JAMS in San Francisco. Through this mediation, and subsequent arms'-length negotiations, the parties reached the instant settlement for which Plaintiff now seeks preliminary approval.

This settlement provides an extraordinary result. First, the agreement provides that LinkedIn will establish a $1,250,000 non-reversionary settlement fund from which injured class members will receive a *pro rata* share of up to $50. That amount is at least equal to, and likely surpasses, the amount that the individual LinkedIn subscribers could expect to receive at trial. Further, and equally important, the settlement requires LinkedIn to implement data security protocols utilizing the industry standard encryption methods of salting and hashing for at least five years.

By providing significant direct cash to the class and valuable prospective relief, the instant settlement exceeds the majority of privacy settlements that have won preliminary and/or final approval—even those where the class was seeking significant statutory damages. *See, e.g.*, *Lane v. Facebook, Inc.*, 696 F.3d 811, 820-22 (9th Cir. 2012) *cert. denied*, 134 S. Ct. 8 (2013) (approving settlement providing a $9.5 million *cy pres* payment as the sole monetary relief despite potential statutory damages of up to up to $10,000 per class member); *In re Google Buzz Privacy Litig.*, No. C 10-00672 JW, 2011 WL 7460099, at *3–5 (N.D. Cal. June 2, 2011) (approving settlement providing an $8.5 million *cy pres* payment as the sole monetary relief despite potential statutory damages of up to $10,000 per class member).

Plaintiff therefore requests that the Court grant preliminary approval to the settlement, approve the form and manner of notice to the class, and confirm the appointment of class counsel.

## II.      BACKGROUND

### A.      Plaintiff's Allegations and the Litigation History

Defendant LinkedIn operates the professional social networking site www.LinkedIn.com. To join LinkedIn, users are required to provide Defendant with certain information, which is stored on its servers. While a basic account with LinkedIn is free, Defendant also offers premium subscriptions that include enhanced networking features and start at a cost of $19.95 per month. The catalyst for this lawsuit was the June 6, 2012 posting by hackers of some 6.4 million stolen LinkedIn user passwords that they obtained by breaching LinkedIn's systems sometime earlier in the year. Plaintiff alleges that this data breach exposed the inadequacies of LinkedIn's data security protections and the inaccuracy of its public statements regarding how it safeguarded LinkedIn users' passwords and other sensitive information. Specifically, Plaintiff claims that LinkedIn's privacy policy stated that it employed "industry standard protocols and technologies" to protect its users' personally identifiable information ("PII"), but LinkedIn only used an SHA-1 algorithm to "hash" its user passwords, when industry standards required that personal information be stored in a "salted and hashed"[1] format. Plaintiff alleges that this allowed the hackers to easily access LinkedIn's users' passwords, and had Plaintiff and the other premium subscribers known about the level of data security they would have paid less for their subscriptions.

On June 15, 2012, LinkedIn user Katie Szpyrka filed a complaint in the Northern District of California alleging multiple claims based on LinkedIn's alleged failure to sufficiently safeguard its users' PII despite its promises to do so.[2] Szpyrka alleged that she paid LinkedIn a subscription fee for premium services, did not receive data protection as promised in LinkedIn's privacy policy, and had her personal information compromised through the data breach. In the months that

---

[1]      Salting is the process of "concatenating a plaintext password with a series of randomly generated characters prior to hashing." (*See* dkt. 78 ¶ 32.) A password or other information is

[2]      These claims included violations of California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 ("UCL"), Cal Civ. Code § 1750, Breach of Contract, Breach of the Implied Covenant of Good Faith and Fair Dealing, Breach of Implied Contracts, Negligence, and Negligence Per Se. (*See* dkt. 1.)

followed, several similar suits were filed against LinkedIn based on the same alleged conduct.[3] Each of the similar class actions against LinkedIn were eventually related and consolidated before this Court. (Dkt. 40.) In connection with the consolidation of these class actions, the Court appointed Jay Edelson as Interim Lead Class Counsel and Laurence King as Liaison Class Counsel. (*Id.*)

On September 19, 2012, Plaintiffs filed a Consolidated Complaint (dkt. 49), which LinkedIn moved to dismiss on November 5, 2012 (dkt. 51). On November 26, 2012, in response to LinkedIn's motion, Plaintiffs filed an Amended Consolidated Complaint adding Khalilah Wright as a plaintiff and bringing claims on behalf of two classes: (1) individuals and entities that paid LinkedIn a monthly fee for a premium account, and (2) individuals whose PII was compromised as a result of the data breach. (Dkt. 54 ¶ 54.) Also, on October 30, 2012, Plaintiff issued her first set of written discovery on Defendant.[4] On December 20, 2012, Defendant filed a motion to dismiss the Amended Complaint arguing that Plaintiffs lacked standing to pursue their claims, which, after full briefing and oral argument, the Court granted on March 5, 2013 with leave to re-plead. (Dkts. 59–61, 64, 67, 69–70.)

On April 30, 2013, Plaintiff Wright filed a Second Amended Consolidated Class Action Complaint ("SAC"). (Dkt. 78.) The SAC pleaded three causes of action—one under each of the "fraud" and "unfair" prongs of the UCL, and one claim for breach of contract based on LinkedIn's statements regarding data security standards in its Privacy Policy. Although the core allegations remained the same, Plaintiff alleged in the SAC that before she purchased her "premium" LinkedIn subscription, she read LinkedIn's User Agreement and Privacy Policy, and that, had Defendant disclosed its actual security practices, she would have either paid less for her premium

---

[3]   These cases included *Paraggua v. LinkedIn*, No. 5:12-cv-03432, *Shepherd v. LinkedIn*, No. 5:12-cv-03422, and *Veith v. LinkedIn*, No. 5:12-cv-03557.

[4]   On January 29, 2013, the United States of America moved to intervene and temporarily stay discovery. (Dkt. 66.) Pursuant to the United States's request, discovery was temporarily stayed. Despite the discovery stay, however, the parties informally exchanged documents unrelated to the purpose of the stay throughout the course of the litigation.

subscription, or not purchased it at all. (*Id.* ¶¶ 70–76.) Plaintiff sought to represent a class defined as follows: "All individuals and entities in the United States who paid a monthly fee to LinkedIn for a Premium Subscription at any point between March 15, 2006 and June 7, 2012." (*Id.* ¶ 77.)

On June 13, 2013, Defendant moved to dismiss the SAC, arguing, once again, that Plaintiff lacked Article III standing, and that she failed to state a claim for relief for each of her causes of action. (Dkt. 81.) On March 28, 2014, the Court granted in part and denied in part LinkedIn's Motion to Dismiss after another round of complete briefing and oral argument. (Dkts. 81–84, 87, 89, 94, 97–98, 100.) In allowing Plaintiff to pursue her UCL fraud claim against Defendant, the Court found that she possessed Article III standing and stated a claim for fraud under Federal Rules of Civil Procedure 8 and 9(b) as she alleged that she read and relied on LinkedIn's statements regarding data security in its Privacy Policy when deciding to purchase a premium subscription. On April 11, 2014, LinkedIn answered the SAC. (Dkt. 101.)

**B.      Settlement Discussions, Mediation, and Resolution**

Throughout the briefing on the pleadings, Defendant steadfastly maintained that it would vigorously defend this case to judgment and beyond. (*See* Declaration of Jay Edelson ¶ 3, attached as Exhibit 2.) As such, for most of this litigation discussions between the parties about the possibility of settlement were minimal. Following the Court's March 28 Order, however, Defendant's unwavering position began to relax—although it nonetheless remained resolute in its belief that it would succeed. (*Id.*) As the parties continued to informally exchange documents relating to the merits of the case and the number of subscribers potentially involved, they eventually determined to attempt to reach a resolution through formal mediation. (*Id.* ¶ 4.) On April 14, 2014, the parties informed the Court of this decision through an ADR teleconference, at which time the Court referred the case to private mediation. (Dkts. 101–102.)

On May 29, 2014, the parties met for a formal, in-person mediation with John B. Bates, Esq. of JAMS in San Francisco. (Edelson Decl. ¶ 5.) Both parties arrived at the mediation having provided Mr. Bates with extensive briefing on their respective litigation and settlement positions. (*Id.*) Over the course of that day, the parties engaged in productive arms'-length negotiations and eventually agreed to the principal terms of a settlement. (*Id.* at 6.) After two months of further

arms'-length negotiations, the parties reached the agreement attached hereto as Exhibit 1 (the "Settlement Agreement" or "Agreement"). (*Id.* at 7.)

## III.   TERMS OF THE SETTLEMENT AGREEMENT

The key terms of the Settlement Agreement are briefly summarized as follows:

### A.   Class Definition

The Agreement provides for a settlement class defined as follows:

All Persons in the United States who paid a fee to LinkedIn for a premium subscription at any time between March 15, 2006 and June 7, 2012.

(Agreement § 1.30.) This proposed settlement class definition is substantively identical to the class definition contained in the SAC. (*See* dkt. 78 at ¶ 77.)

### B.   Monetary Relief

LinkedIn has agreed to establish a $1,250,000 non-reversionary settlement fund (the "Settlement Fund") from which each member of the Settlement Class who submits a valid claim confirming they were influenced by LinkedIn's statements in its user agreement or privacy policy about its security shall be entitled—after payment of notice and administration costs, attorneys' fees, and an incentive award—to a *pro rata* distribution of up to fifty dollars. (Agreement §§ 1.32, 2.1(a).) In the unlikely event that the number of valid claims submitted would result in *pro rata* payments to class members of less than ten dollars, the parties have agreed to return to mediation and may seek approval of a modified plan to pay class members with valid claims. (*Id.* § 2.1(b).)

No amount of the Settlement Fund shall revert back to Defendant. If any funds remain in the Settlement Fund after all valid claims have been paid, such funds shall be divided among the following three nonprofit organizations, subject to this Court's approval, as *cy pres* recipient(s), (Agreement § 2.1(c)):[5]

- Center for Democracy & Technology ("CDT"): CDT is a 501(c)(3) nonprofit organization that seeks to support laws, corporate policies, and technology tools that

---

[5] Each of the proposed entities is a proper *cy pres* recipient as they "account[] for the nature of the plaintiffs' lawsuit, the objectives of the underlying statutes, and the interests of the silent class members . . . ." *Lane*, 696 F.3d at 819–20.

protect the privacy rights of internet users. *See* Center for Democracy and Tech., *About CDT*, https://cdt.org/about/ (last visited Aug. 7, 2014). The CDT focuses on protecting web users from malicious actors cybersecurity initiatives, *see* Center for Democracy and Tech., *Cybersecurity*, https://cdt.org/issue/security-surveillance/cybersecurity-2/ (last visited Aug. 7, 2014), as well as consumer privacy data issues, *see* Center for Democracy and Tech., *Consumer Privacy*, https://cdt.org/issue/consumer-privacy/ (last visited Aug. 7, 2014).

- World Privacy Forum ("WPF"): The WPF is a 501(c)(3) public interest organization dedicated to reimagining privacy in the digital era through research, education and analysis. The WPF focuses on data breach, consumer privacy, digital privacy, cybersecurity, and encryption issues, among others. *See* World Privacy Forum, www.worldprivacyforum.org (last visited Aug. 7, 2014).

- Carnegie Mellon CyLab Usable Privacy and Security Laboratory: This laboratory is a division of Carnegie Mellon University's CyLab, one of the largest university-based cybersecurity research and education centers in the country. The division brings together researchers working on a diverse set of projects related to understanding and improving the usability of privacy and security software and systems. *See* CyLab Usable Privacy and Sec. Lab., http://cups.cs.cmu.edu (last visited Aug. 7, 2014).

## C.    Prospective Relief

LinkedIn agrees that it shall employ both salting and hashing, or equivalent or greater forms of data security, to protect LinkedIn users' passwords for a period of five (5) years. (Agreement § 2.2.) LinkedIn shall be responsible for all costs associated with the implementation of this relief. (*Id.*)

## D.    Release

In exchange for the relief described above, the Defendant, and each of its related and affiliated entities (the "Released Parties" defined in the Settlement) will receive a full release of all claims arising out of or related to LinkedIn's representations about the security of its users' personal information, passwords, or data in its User Agreement or Privacy Policy and the 2012 data breach that resulted in the June 6, 2012 posting users passwords online. (*See* Agreement §§ 1.24–1.26 for full release language.)

## E.    Notice and Settlement Administration Expenses

The Parties have agreed to the appointment of Kurtzman Carson Consultants ("KCC") to act as Settlement Administrator and to provide notice to the proposed class in the manner set out below. (Agreement § 1.18.) The costs of notice and settlement administration are not to exceed

1   $180,000 and shall be paid from the settlement fund. (*Id.* §§ 1.27, 1.32.)

2       **F.      Incentive Award**

3       In recognition of Plaintiff's time and effort serving as class representative, class counsel

4   will petition the Court for an incentive award not to exceed $7,500. (Agreement § 8.3.) LinkedIn

5   may oppose this request. Should the Court award an incentive award in an amount less than that

6   requested, the difference will remain in the settlement fund to pay valid claims or, if funds remain

7   after paying all valid claims, be given to the *cy pres* recipients. (*Id.* § 8.4.)

8       **G.      Attorneys' Fees and Expenses**

9       Class counsel will petition the Court for reasonable attorneys' fees and reimbursement of

10  costs from the settlement fund. (*See* Agreement §§ 1.12, 8.1.) Class counsel have agreed to

11  petition the court for no more than one-third of the settlement fund and LinkedIn may oppose class

12  counsel's request. Should the Court award of fees and expenses in an amount less than that

13  requested, the difference will remain in the settlement fund to pay valid claims or, if funds remain

14  after paying all valid claims, be given to the *cy pres* recipients. (*Id.* § 8.2.)

15  **IV.    THE PROPOSED SETTLEMENT CLASS SHOULD BE CERTIFIED**

16      The Court's first step in the process of granting preliminary approval of a settlement is to

17  determine that the proposed settlement class is appropriate for certification. Manual for Complex

18  Litigation § 21.632 (4th ed. 2004); *Amchem Prods. Inc. v. Windsor*, 521 U.S. 591, 620 (1997). To

19  certify a class, the plaintiff must demonstrate that the proposed class and proposed class

20  representative meet four requirements: (1) numerosity; (2) commonality; (3) typicality; and (4)

21  adequacy of representation. Fed. R. Civ. P. 23(a)(1–4).

22      In addition, a plaintiff seeking class certification must also meet at least one of the

23  requirements of Rule 23(b). Fed. R. Civ. P. 23(b); *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct.

24  2541, 2548 (2011). Where, as here, plaintiff seeks certification of a class under Rule 23(b)(3), she

25  must demonstrate "that questions of law or fact common to class members predominate over any

26  questions affecting only individual members, and that a class action is superior to other available

27  methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3); *Kagan v.*

28  *Wachovia Sec.*, L.L.C., No. 09-5337 SC, 2012 WL 1109987, at *4 (N.D. Cal. Apr. 2, 2012). Here,

the proposed settlement class meets each of the elements of certification under Rule 23(a) and satisfies the requirements of Rule 23(b)(3).

## A.     The Requirement for Numerosity Is Satisfied

The first prerequisite to class certification under Rule 23 is that the "class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). There is no specific minimum number of proposed class members required to satisfy the numerosity requirement, but generally a class of forty or more members is considered sufficient. *Moshogiannis v. Sec. Consultants Grp., Inc.*, No. 5:10-CV-05971 EJD, 2012 WL 423860, at *3 (N.D. Cal. Feb. 8, 2012) (holding that numerosity is satisfied by class of 254 members); *see also Hopkins v. Stryker Sales Corp.*, No. 5:11-CV-02786-LHK, 2012 WL 1715091, at *4 n.9 (N.D. Cal. May 14, 2012) (finding numerosity satisfied by class of 130); *Algee v. Nordstrom, Inc.*, No. C 11-301 CW MEJ, 2012 WL 1575314, at *2 (N.D. Cal. May 3, 2012) (finding a class of 60 sufficient).

Here, based on information provided by LinkedIn, there are approximately 800,000 individuals who paid a fee to LinkedIn for a premium subscription between March 15, 2006 and June 7, 2012. (Edelson Decl. ¶ 4.) Accordingly, the proposed class is so numerous that joinder of their claims is impracticable, and the numerosity requirement is easily satisfied.

## B.     The Requirement of Commonality Is Satisfied

Second, Rule 23 requires that "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). Commonality is demonstrated when the claims of all class members "depend upon a common contention," with "even a single common question" sufficing. *Dukes*, 131 S. Ct. at 2545, 2557 (citation omitted); *see also Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998) ("The existence of shared legal issues with divergent factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies within the class.") The common contention must be of such a nature that it is capable of class-wide resolution, and that the "determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Dukes*, 131 S. Ct. at 2545. Moreover, the permissive standard of commonality provides that "[w]here the circumstances of each particular

1   class member vary but retain a common core of factual or legal issues with the rest of the class,

2   commonality exists." *Parra v. Bashas', Inc.*, 536 F.3d 975, 978–79 (9th Cir. 2008).

3       Here, the class shares identical statutory claims under the UCL premised on Plaintiff's

4   allegations that LinkedIn failed to take steps to adequately protect its users' personal information,

5   despite promises in its privacy policy that it would. (Dkt. 78 ¶ 28–29.) Plaintiff alleges that

6   LinkedIn made the *same* security representation to each class member—that "[p]ersonal

7   information [users] provide[d would] be secured with industry standards and technology," (dkt. 81

8   at 5)—and had the same security deficiencies (*i.e.*, failure to salt and properly hash) throughout the

9   class period. These common factual predicates lead to numerous common questions, such as: (a)

10  whether LinkedIn failed to protect its users' PII with industry-standard protocols and technologies;

11  (b) whether the allegedly false promises LinkedIn made in its privacy policies are material; (c)

12  whether the security representations contained in LinkedIn's privacy policy, in light of the actual

13  state of LinkedIn's security practices, constitute a violation of the UCL; and (d) whether Plaintiff

14  and the other members of the proposed settlement class are entitled to recover.

15      Answering these questions, regardless of the outcome, will resolve the allegations for the

16  whole class "in one stroke," thereby effectuating "class wide resolution." In fact, courts have

17  found that privacy litigation concerning inadequate security measures to protect consumers' PII

18  are particularly suited for class certification because the class members' claims are all based on the

19  same action (or inaction) of defendant. *See Tabata v. Charleston Area Medical Center, Inc.*,

20  759 S.E.2d 459, 466–67 (W. Va. 2014). In addition, the Court's interpretation of the promises

21  LinkedIn made allegedly made are all contained in a "form contract" with its users—in this case,

22  LinkedIn's privacy policy—and can therefore be resolved for the whole class in "one stroke." *See,*

23  *e.g.*, *Harris v. comScore, Inc.*, 292 F.R.D. 579, 585 (N.D. Ill. 2013) ("It is well established that

24  claims arising from interpretations of a form contract appear to present the classic case for

25  treatment as a class action.") Finally, the question of whether those promises were "material"

26  under the UCL is also a common question that in turn allows for a presumption of reliance on

27  those promised by the class. *Greenwood v. Compucredit Corp.*, No. 08-cv-4878, 2010 WL

28  4807095, at *5 (N.D. Cal. Nov. 19, 2010); *see also Estrella v. Freedom Fin. Network, LLC*, No.

09-cv-3156, 2010 WL 2231790, at *9–10 (N.D. Cal. June 2, 2010). Thus, the proposed settlement class meets the requirement of commonality.

### C.      The Requirement of Typicality Is Satisfied

Rule 23 next requires that the class representative's claims be typical of those of the putative class she seeks to represent. Fed. R. Civ. P. 23(a)(3). The typicality requirement ensures that "the interest of the named representative aligns with the interests of the class." *Wolin v. Jaguar Land Rover N. Am. LLC*, 617 F.3d 1168, 1175 (9th Cir. 2010). Typicality is measured under a permissive standard and does not require that the representative's claims be substantially identical, but only that they are "reasonably co-extensive with [the claims] of absent class members . . . ." *Hanlon*, 150 F.3d at 1020. Typicality is present when a defendant acts uniformly toward the class members, where that uniform conduct results in injury to the class members, and where the named plaintiffs suffer a similar injury to that of the class members as a result. *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992).

In the instant case, Plaintiff has the same claims and interests as the proposed settlement class. Every member of the proposed settlement class (including Plaintiff) paid LinkedIn for a "premium" subscription, they were all presented with the same allegedly material misrepresentations about Defendant's data security practices. As such, the typicality requirement is satisfied. *See, e.g.*, *Estrella*, 2010 WL 2231790, at *10 ("[B]ecause plaintiffs' allegations are amenable to proving reliance on a classwide basis, and because [defendant] does not argue that any of its customers received disclosure statements that were materially different from those received by the named plaintiffs, [plaintiffs] are typical of the proposed class.").

### D.      The Requirement of Adequate Representation Is Satisfied

Finally, Rule 23(a) requires that the proposed class representative has and will continue to "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). To determine if representation is in fact adequate, the Court must ask "(1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Hanlon*, 150 F.3d at 1020. Further, where a plaintiff's claims are found to be typical of those of the class, appointing

that plaintiff as the class representative will also ensure that interests of the class remain adequately protected. *See Dukes*, 131 S. Ct. at 2551 n.5 (discussing how the fulfillment of the typicality requirement usually also supports a finding of adequacy because an adequate representative will have claims that are typical of those of the class.)

Here, Plaintiff clearly meets the requirements to be named class representative in this case. First, as discussed above, Plaintiff shares the same interests in securing relief for the claims in this case as every other member of the proposed settlement class and there is no evidence of any conflict of interest. Next, Plaintiff has demonstrated her continued willingness to vigorously prosecute this case and has regularly consulted with her counsel, has aided in the prosecution of the litigation, has reviewed documents and the proposed settlement, and has indicated her desire to continue protecting the interests of the class though settlement or continued litigation. (Edelson Decl. ¶ 8.) As such, she should be appointed as representative of the class.

Plaintiff's counsel similarly will continue to adequately protect the interest of the proposed Settlement Class and have already been appointed interim lead counsel by the Court. (Dkt. 40). Proposed class counsel have regularly engaged in major complex litigation and have extensive experience in consumer privacy class action lawsuits—including cases of first impression related to data breaches and consumer privacy—and have been appointed class counsel in these efforts. *See, e.g.*, *Harris v. comScore, Inc.*, No. 11-cv-5807 (dkt. 353 at 2) (N.D. Ill. June 6, 2014); *Resnick v. Avmed*, No. 10-cv-24513 (dkt. 82 at 3) (S.D. Fla. Oct. 25, 2013); *Standiford v. Palm*, No. 5:09-cv-05719-LHK (dkt. 82 at 2) (N.D. Cal. Jan. 26, 2012). (*See also* Firm Resume of Edelson PC, a copy of which is attached to the Edelson Decl. ¶ 9 as Exhibit A.) Moreover, class counsel have diligently investigated, prosecuted, and dedicated substantial resources to the claims in this action, and will continue to do so throughout its pendency. (Edelson Decl. ¶ 10.) As such, the Plaintiff and proposed class counsel will adequately represent the members of the Settlement Class and their interests.

### E.     The Proposed Settlement Class Meets the Requirements of Rule 23(b)(3)

In addition to meeting the requirements of Rule 23(a), the proposed settlement class must also satisfy one of the three requirements of Rule 23(b) in order to be certified. *Dukes*, 131 S. Ct.

at 2548. Rule 23(b)(3) provides that a class action can be maintained where: (1) the questions of law and fact common to members of the class predominate over any questions affecting only individuals; and (2) the class action mechanism is superior to the other available methods for the fair and efficient adjudication of the controversy. Fed. R. Civ. P. 23(b)(3); *Pierce v. Cnty. of Orange*, 526 F.3d 1190, 1197 n.5 (9th Cir. 2008). Certification under Rule 23(b)(3) is appropriate and encouraged "whenever the actual interests of the parties can be served best by settling their differences in a single action." *Hanlon*, 150 F.3d at 1022. Here, common questions of law and fact predominate, and the present class action is the best method of adjudication.

### 1.    *Common Questions of Law and Fact Predominate*

The predominance requirement focuses on whether the proposed class is sufficiently cohesive to warrant adjudication by representation. *Amchem*, 521 U.S. at 623. Predominance exists "[w]hen common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication . . . ." *Hanlon*, 150 F.3d at 1022. Here, as noted above, the common factual and legal questions presented are: (a) whether LinkedIn failed to protect its users' PII with industry-standard protocols and technologies; (b) whether the allegedly false promises LinkedIn made in its privacy policies are material; and (c) whether the security representations contained in LinkedIn's privacy policy, in light of the actual state of LinkedIn's security practices, constitute a violation of the UCL. These common questions can be resolved for all members of the proposed class in a single adjudication, and are the central focus of this class action. Indeed the only even potentially individual issues in this litigation are whether class members relied on LinkedIn's alleged misrepresentations, and the amount that each class member overpaid for their subscription.[6] But neither of these issues is sufficient to defeat certification, and the common questions predominate over them. *See, e.g.*, *Greenwood*, 2010 WL 4807095, at *5 (holding that where all class members received same alleged misrepresentations, reliance is presumed, and thus "individualized issues of reliance do not overcome the predominance of

---

[6]    The price of LinkedIn's "premium" subscription varied between $19.95 to $499.95 per month, depending on the features and the plan chosen. (Dkt. 78 at ¶ 19.)

common issues in [such a] case"); *Yokoyama v. Midland Nat'l Life Ins. Co.*, 594 F.3d 1087, 1094 (9th Cir. 2010) (holding that individual nature of damages does not defeat class certification).

### 2. *This Class Action Is the Superior Method of Adjudication*

Finally, certification of this suit as a class action is superior to other methods available to fairly, adequately, and efficiently resolve the claims of the class. To meet the requirement of superiority, a plaintiff must show that a class action is the "most efficient and effective means of resolving the controversy." *Wolin*, 617 F.3d at 1175–76; *see also Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1234–35 (9th Cir. 1996) (describing a class action as superior when it will reduce the costs inherent in litigation and "no realistic alternative exists" for the class members). "Where recovery on an individual basis would be dwarfed by the cost of litigating on an individual basis, this factor weighs in favor of class certification." *Wolin*, 617 F.3d at 1175. Moreover, the class action mechanism is superior to individual actions in consumer cases with thousands of members as "Rule 23(b)(3) was designed for situations such as this . . . in which the potential recovery is too slight to support individual suits, but injury is substantial in the aggregate." *Holloway v. Full Spectrum Lending*, No. 06-cv-5975, 2007 WL 7698843, at *9 (C.D. Cal. June 26, 2007) (quoting *Murray v. GMAC Mortg. Corp.*, 434 F.3d 948, 953 (7th Cir. 2006)). Finally, as in this action, when parties have already negotiated a compromise, courts need not focus on issues that could surface at trial, because a finally approved settlement would extinguish the need for one. *Amchem*, 521 U.S. at 620.

Here, the proposed settlement class is comprised of approximately 800,000 persons and, if each were to pursue their claims against LinkedIn individually, they would each need to provide nearly the same—if not identical—legal and factual arguments and evidence. The result would be thousands of trials at enormous expense to the proposed class members, LinkedIn, and the courts. Comparing the relative small amount of damages each class member seeks to recover—*i.e.*, the portion of their monthly subscription price attributable to the data protection they allegedly did not receive—with the costs of actually prosecuting those claims makes clear that individual class members would have little incentive to pursue them on their own. *See Vandervort v. Balboa Capital Corp.*, 287 F.R.D. 554, 562 (C.D. Cal. 2012) (holding that a class action is superior to

maintaining individual claims for a small amount of damages). Where, as here, individual recoveries for Plaintiff and the proposed class would be small and, but for the class action, would likely not even be pursued, the practical utility of the class action mechanism under federal law is apparent. *See Chamberlan v. Ford Motor Co.*, 223 F.R.D. 524, 527 (N.D. Cal. 2004).

Accordingly, this class action is the superior method for adjudicating the controversy between the parties, and, as all requirements of class certification under Rule 23 are met, the proposed settlement class should be certified.

## V.     THE COURT SHOULD AFFIRM THE APPOINTMENT OF CLASS COUNSEL

Under Rule 23, "a court that certifies a class must appoint class counsel . . . [who] must fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(g)(1)(B). In making this determination, the Court must consider the following attributes of counsel: (1) work in identifying or investigating potential claims; (2) experience in handling class actions or other complex litigation, and the types of claims asserted in the case; (3) knowledge of the applicable law; and (4) resources committed to representing the class. Fed. R. Civ. P. 23(g)(1)(A)(i–iv).

As discussed above, proposed class counsel (and current interim class counsel) have extensive experience in prosecuting similar class actions and other complex litigation. (Edelson Decl. ¶ 9.) They have pioneered the application of fraud and unjust enrichment principles in data breach litigation, *see, e.g.*, *Resnick v. Avmed*, No. 10-cv-24513 (S.D. Fla.), and have been appointed as class counsel in numerous other privacy/data breach lawsuits. (Edelson Decl. ¶ 9.) Specific to this case, proposed class counsel have diligently investigated this matter by dedicating substantial resources to the investigation of the claims at issue, which has included interviews of LinkedIn users, consultations with data security and technology experts, and exchange of information with LinkedIn's attorneys. (Edelson Decl. ¶ 10.) Proposed class counsel have also taken the lead in developing the theories of this lawsuit, coordinating among other plaintiffs' counsel, briefing two motions to dismiss (and defeating the second), and successfully negotiating the present settlement to the benefit of the Settlement Class. (*Id*.) Accordingly, the Court should confirm the appointment of Jay Edelson, Rafey S. Balabanian, Ari J. Scharg, and J. Dominick Larry of Edelson PC as lead class counsel. Plaintiff also respectfully requests that this Court

1   appoint Laurence King, Linda Fong, and David Straite of Kaplan Fox & Kilsheimer LLP as

2   Liaison Class Counsel.

3   **VI.   THE PROPOSED SETTLEMENT WARRANTS PRELIMINARY APPROVAL**

4          After determining that the proposed settlement class should be certified, this Court must

5   approve any settlement of this class action lawsuit. The procedure for review of a proposed

6   settlement is a well-established two-step process. Fed. R. Civ. P. 23(e); *see also* Herbert Newberg

7   & Alba Conte, Newberg on Class Actions § 11.25 at 3839 (4th ed. 2002). The first step is a

8   preliminary, pre-notification hearing to ensure that the settlement is not "unacceptable at the

9   outset." *Id.* The Manual for Complex Litigation characterizes the preliminary approval stage as an

10  "initial evaluation" of the fairness of the proposed settlement made by a court on the basis of

11  written submissions and informal presentations from the settling parties. Manual for Complex

12  Litigation (Fourth) § 21.632 (2004).

13         While the Ninth Circuit has expressed a strong judicial policy favoring the voluntary

14  conciliation and settlement of complex class action litigation, *In re Syncor ERISA Litig.*, 516 F.3d

15  1095, 1101 (9th Cir. 2008), it has not specified a particular standard for granting preliminary

16  settlement approval. Nevertheless, courts in this district generally look to four factors in making

17  this determination. Specifically, preliminary approval should be given and notice of the settlement

18  disseminated to class members where "[1] the proposed settlement appears to be the product of

19  serious, informed, non-collusive negotiations, [2] has no obvious deficiencies, [3] does not

20  improperly grant preferential treatment to class representatives or segments of the class, and [4]

21  falls within the range of possible approval." *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d

22  1078, 1079 (N.D. Cal. 2007) (quoting Manual for Complex Litigation (Second) § 30.44 (1985)).

23  *See also Boring v. Bed Bath & Beyond of Cal. LLC*, No. 12-cv-05259-JST, 2013 WL 6145706, at

24  *7 (N.D. Cal. Nov. 21, 2013) (quoting *Tableware*); *Cordy v. USS-Posco Indus.*, No. 12-cv-00553-

25  JST, 2014 WL 212587, at *2 (N.D. Cal. Jan. 17, 2014) (same); *Ching v. Siemens Indus., Inc.*, No.

26  C 11-4838 MEJ, 2013 WL 6200190, at *5 (N.D. Cal. Nov. 26, 2013) (same). The proposed

27  settlement here—which achieves the action's objectives of obtaining both monetary payments for

28  the class and strong prospective relief ensuring LinkedIn users' personal information is adequately

protected—easily satisfies these four factors.

First, the proposed settlement is the product of serious, informed, non-collusive negotiations. Settlement negotiations are generally found to be non-collusive when reached with the assistance of a third-party neutral, *see, e.g.*, *Boring*, 2013 WL 6145706, at *7, and are found to have been informed where the parties exchanged evidence and information prior to negotiations. *See, e.g.*, *Moshogiannis*, 2012 WL 423860, at *5 (holding that settlement was fair, reasonable, and adequate where, *inter alia*, "the parties conducted a significant amount of informal discovery…"). Here, the parties' respective assessment of the strengths and weaknesses of the case was informed by this Court's two rulings on motions to dismiss. Further, after the conclusion of the briefing on the pleadings, with the issues and theories set, the parties engaged in the informal exchange of information and decided to broach the issue of possible settlement. (Edelson Decl. ¶ 4.) In fact, all settlement negotiations were conducted after the exchange of information and in the presence of Mr. Bates at JAMS after lengthy mediation submissions. As such, this first factor is satisfied. *See, e.g.*, *Williams v. Costco Wholesale Corp.*, No. 02-cv-2003, 2010 WL 761122, at *5 (S.D. Cal. Mar. 4, 2010) ("Plaintiff ha[d] sufficient information from investigation and from informal discovery to have a clear view of the strengths and weaknesses of the case and to support the settlement."); *Harris v. Marketing Corp.*, No. 08-cv-5198, 2011 WL 1627973, at *8 (N.D. Cal. Apr. 29, 2011) ("With the Court's prior rulings as guidance, the parties were in a position to assess the strengths and weaknesses of their arguments and evidence, and make an informed decision about the risks associated with proceeding . . . to trial.").

Second, there are no obvious deficiencies in the proposed settlement. In contrast to most class action privacy settlements, the settlement here provides actual monetary payments to affected class members and the prospective relief sought by the proposed settlement class all without the risk, delay, and expense of further litigation. While Plaintiff believes that the class would have been certified and that she would have ultimately succeeded at summary judgment or trial, balancing the strength of the class's claims against the legal and factual obstacles remaining, Plaintiff and class counsel concluded that accepting the relief afforded by the proposed settlement was in the best interest of the class. (Edelson Decl. ¶ 12.) For instance, in order to prevail at trial,

Plaintiff would first have to show that LinkedIn's alleged misrepresentations were "material." Next, Plaintiff would have to win a "battle of the experts" on an issue of first impression regarding what "industry standard" data security entails and whether LinkedIn's procedures during the class period met those standards. Plaintiff also would have had to introduce expert testimony (again, likely to be contested by LinkedIn) to support her theory of economic damages—that she paid more than she otherwise would have had LinkedIn not misrepresented its data security procedures. In light of the monetary relief and prospective data security protections under the settlement (especially when weighed against continued litigation), the agreement here is not certainly not "obviously deficient." *See, e.g.*, *Tableware*, 484 F. Supp. 2d at 1080 ("Based on [the] risk and the anticipated expense and complexity of further litigation, the court cannot say the proposed settlement is obviously deficient . . . ."); *Tijero v. Aaron Bros., Inc.*, No. C 10-01089-SBA, 2013 WL 6700102, at *8 (N.D. Cal. Dec. 19, 2013) ("[T]here are no obvious deficiencies. To the contrary, the settlement confers tangible monetary benefits to the class . . . ."); *Ching*, 2013 WL 6200190, at *6 (finding "no obvious deficiencies" in settlement providing monetary relief to class).

Third, the settlement provides no preferential treatment to any individual member of the proposed settlement class. Under the settlement, everyone in the class is treated exactly the same: each class member seeking to recover a portion of the Settlement Fund must submit exactly the same claim form, and each class member submitting a valid claim form will receive the same *pro rata* distribution from the Fund. While Plaintiff will be seeking from this Court a modest incentive award in recognition of the time and effort she spent acting as class representative, such awards are common and in no way preclude preliminary approval. *See, e.g.*, *Villegas v. J.P. Morgan Chase & Co.*, No. 09-cv-00261, 2012 WL 5878390, at *7 (N.D. Cal. Nov. 21, 2012); *Cordy*, 2014 WL 212587, at *1, 3.

Finally, this settlement falls well within the range of possible approval. In evaluating this factor, "courts primarily consider plaintiffs' expected recovery balanced against the value of the settlement offer." *Tableware*, 484 F. Supp. 2d at 1080. Here, were the class able to overcome the obstacles in this case and obtain a complete victory, class members would be entitled to an injunction under the UCL requiring the use of industry standard data security protections and

restitution of the amount each overpaid for their LinkedIn subscription. *See Freeman v. ABC Legal Servs., Inc.*, 877 F. Supp. 2d 919, 923 (N.D. Cal. 2012) (recognizing it is well-established that in a UCL case recovery is limited to an injunction and restitution). Under the settlement, LinkedIn has agreed to employ the industry-standard encryption methods of salting and hashing, and class members thus receive through the settlement all injunctive relief they could have obtained at trial.

More importantly, the settlement will also likely provide those class members that were influenced by LinkedIn's alleged data security promises with a full recovery. While the class consists of approximately 800,000 premium subscribers, class counsel estimates that between 20,000 to 50,000 class members viewed LinkedIn's Privacy Policy or Terms and Conditions, were likely influenced by LinkedIn's data security representations (i.e. were injured), and would thus be entitled to recovery at trial. (Edelson Decl. ¶ 13.) A full monetary recovery for those class members after complete victory at trial would not, of course, be the total amount they paid for the subscriptions, but the amount they *overpaid* for subscriptions that allegedly were misrepresented to include industry standard data encryption. *See, e.g., In re Vioxx Class Cases*, 103 Cal. Rptr. 3d 83, 96 (Cal. Ct. App. 2009) ("The difference between what the plaintiff paid and the value of what the plaintiff received is a proper measure of restitution."). Based on their investigation, discussion with class members, and informal discovery, class counsel believe that even if they were to succeed at trial, a jury would return a verdict on this theory ranging from $5 to $50 per injured class member. (Edelson Decl. ¶ 11.) Consequently, the $10 to $50 settlement payments provide full refunds (or more) for that portion of the subscription fees that were allegedly overpayments made in reliance on the alleged misrepresentations regarding data security, and that could likely be recovered at trial.[7]

---

[7]   If all 20,000–50,000 estimated class members who relied on LinkedIn's alleged misrepresentations were to file claims against the Settlement Fund, they would each receive approximately $13-$32. That amount is approximately 26%–64% of the $50 maximum likely recovery at trial, placing the settlement well within the range of preliminary approval. *See, e.g., In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000) ("It is well-settled law that a cash settlement amounting to only a fraction of the potential recovery does not per se render the (footnote continued)

This monetary relief is in line with (or exceeds) the monetary relief available in the few other privacy class actions that provide actual payments to class members, *see, e.g.*, *Resnick v. Avmed*, No. 10-cv-24513 (dkt. 91 ¶ 12) (S.D. Fla. Feb. 28, 2014) (establishing $3 million dollar fund to provide approximately 1.2 million class members cash payments between $10–$30 dollars); *Kazemi v. Payless Shoesource, Inc.*, No. 09-cv-5142 (dkt. 94 ¶ 10) (N.D. Cal. April 2, 2012) (approving settlement offering a $15 voucher to each class member in Telephone Consumer Protection Act case providing for $500 statutory damages), and is far superior than privacy class settlements that provide for all *cy pres* disbursement of the fund or credit monitoring services, including those were significant statutory damages were sought. *See, e.g.*, *Beringer v. Certegy Check Services, Inc.*, No. 07-cv-01657 (dkt. 59) (M.D. Fla. Sept. 3, 2008) (establishing a $5 million fund to provide approximately 37 million class members with up to two years of credit monitoring); *Lane*, 696 F.3d at 820–22 (approving settlement providing a $9.5 million *cy pres* payment as the sole monetary relief).

In any case, and especially when considered in light of the significant injunctive relief, the monetary relief here places the settlement well within the range of possible approval. And because the settlement here satisfies each of the four factors generally considered by courts in this district on preliminary approval, this Court should—consistent with the Ninth Circuit's strong judicial policy favoring settlement—preliminarily approve the Settlement Agreement.

## VII.   THE PROPOSED NOTICE PLAN

To satisfy the requirements of both Rule 23 and Due Process, "[f]or any class certified under Rule 23(b)(3), the court must direct to class members the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B); *accord Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 (1974). Rule 23(c)(2)(B) also provides that the substance of the "notice must clearly and

---

settlement inadequate or unfair."); *Villegas*, 2012 WL 5878390, at *6–7 (finding settlement providing approximately 15% of potential recovery was "within the range of possible approval"). If 12,916 class members submit valid claims (a claims rate of 26%–65% of the 20,000–50,000 injured by the alleged misrepresentations), each would receive the full $50.

concisely state in plain, easily understood language" the nature of the action, the definition of the class to be certified, the class claims and defenses at issue, as well as explain that class members may enter an appearance through counsel if so desired, request to be excluded from the settlement class, and that the effect of a class judgment shall be binding on all class members. Fed. R. Civ. P. 23(c)(2)(B). Notice is "adequate if it may be understood by the average class member." Newberg § 11:53 at 167. Rule 23(e)(1) similarly advises that "[t]he court must direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1). Here the parties have agreed on a notice plan described below that satisfies these requirements (the "Notice Plan"), and Plaintiff respectfully requests that this Court approve it.

Upon entry of preliminary approval, LinkedIn or KCC will send each class member a summary notice by email, which will include an electronic link to the claim form. This direct notice also includes contact information for proposed class counsel, the settlement website address, instructions on how to access the Court's docket via PACER, the date of the final approval hearing, and instructions on how to object or opt-out of the settlement. (*See* Agreement Exs. B–C.) Near the end of the claims period, a second "final notice" will be emailed to all of the class members. (Agreement § 4.1(a).)

Each of these summary notice emails will direct potential class members to the settlement website, which will serve as a more detailed form of notice and provide class members with the ability to file a claim form on-line. (Agreement Ex. B.) The settlement website contains, in plain language, all requirements of Rule 23(c)(2)(B) about the nature of the lawsuit and class members' rights as well as provide access to relevant court documents (in addition to how to access the entire docket on PACER), answers to frequently asked questions, and a toll-free number to reach proposed class counsel. (*Id.* Ex. C.) The format and language of each form of notice has been drafted so that it is in plain language, is easy to read, and will be readily understood by the proposed class.

Additionally, the Class Action Fairness Act requires that notice of a proposed settlement be sent to certain government officials. 28 U.S.C. § 1715. Within ten days of the filing of this Motion, KCC will serve the proper notice upon the required officials. (Agreement § 4.2.)

1    Accordingly, the proposed Notice Plan comports with Rule 23 and the requirements of

2 Due Process and should be approved by this Court.

3 **VIII.   CONCLUSION**

4    For the foregoing reasons, Plaintiff respectfully requests that this Court enter an order (1)

5 certifying the proposed settlement class; (2) naming Plaintiff as class representative; (3)

6 appointing Jay Edelson, Rafey S. Balabanian, Ari J. Scharg, and J. Dominick Larry of Edelson PC

7 as lead class counsel and Laurence King, Linda Fong, and David Straite of Kaplan Fox &

8 Kilsheimer LLP as Liason Class Counsel; (4) granting preliminary approval to the Settlement

9 Agreement; (5) approving the proposed Notice Plan; (6) scheduling a final fairness hearing; and

10 (7) granting such further relief the Court deems reasonable and just.

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Dated: August 15, 2014

Respectfully Submitted,

KHALILAH WRIGHT, individually and on behalf of the Class of similarly situated individuals,


/s/ *Ari J. Scharg*
_____

Mark S. Eisen – SBN 289009
meisen@edelson.com
EDELSON PC
555 West Fifth Street, 31st Floor
Los Angeles, California 90013
Tel: 213.533.4100
Fax: 213.947.4251

Jay Edelson (Admitted *Pro Hac Vice*)
jedelson@edelson.com
Rafey S. Balabanian (Admitted *Pro Hac Vice*)
rbalabanian@edelson.com
Ari J. Scharg (Admitted *Pro Hac Vice*)
ascharg@edelson.com
J. Dominick Larry (Admitted *Pro Hac Vice*)
nlarry@edelson.com
EDELSON PC
350 North LaSalle Street, Suite 1300
Chicago, Illinois 60654
Tel: 312.589.6370
Fax: 312.589.6378

Laurence D. King – SBN 206423
lking@kaplanfox.com
Linda M. Fong – SBN 124232
lfong@kaplanfox.com
KAPLAN FOX & KILSHEIMER LLP
350 Sansome Street, Suite 400
San Francisco, California 94104
Tel: 415.772.4700

1

**CERTIFICATE OF SERVICE**

2

        The undersigned certifies that on August 15, 2014, he caused this document to be

3

electronically filed with the Clerk of the Court using the CM/ECF system, which will send

4

notification of filing to counsel of record for each party.

5

6

Dated: August 15, 2014                              EDELSON PC

7

                                        By:  /s/ Ari J. Scharg

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28