1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

IN RE
LINKEDIN USER PRIVACY
LITIGATION

Case No. 5:12-cv-03088-EJD

**ORDER GRANTING MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT; GRANTING MOTION FOR ATTORNEY FEES, COSTS AND INCENTIVE AWARD**

Re: Dkt. Nos. 141, 145

The instant case is a putative class action suit brought by Representative Plaintiff Khalilah Wright ("Plaintiff" or "Wright") against LinkedIn Corporation ("Defendant" or "LinkedIn"). Presently before the Court is the Motion for Final Approval of Class Action Settlement and Award of Attorneys' Fees ("Final Approval Motion"). See Dkt. Nos. 141, 145.

Federal jurisdiction arises pursuant to 28 U.S.C. § 1331. Having carefully reviewed the Settlement Agreement and parties' and objectors' arguments and papers, the Court has determined the motions should be granted in part and denied in part for the reasons explained below.

I.    **BACKGROUND**

A.    **Factual and Procedural Background**

LinkedIn owns and operates www.LinkedIn.com, a "Professional Network" serving 200 million users. See Dkt. No. 78 ¶ 2. When purchasing a premium account ($19.95-$499.95 per month), consumers are purported to receive a bundle of Premium Services, including LinkedIn's

social and professional networking services and industry standard data privacy and security services as set forth in LinkedIn's Privacy Policy.  See id. ¶¶ 4-6.  LinkedIn promises industry-standard technologies and procedures, including protection of Premium Subscribers' personal information.  See id. ¶¶ 28.  Thus, reasonable consumers expect industry-standard data and information security practices when creating an account and submitting personal and financial information.  See id. ¶ 29.  However, LinkedIn's data security measures had been outdated since at least 2006: LinkedIn did not use "salting" to encrypt its users' passwords, and used an extremely outdated "hashing" algorithm.  See id. ¶¶ 41-45.  On June 6, 2012, approximately 6.4 million LinkedIn member passwords were stolen.  See id. ¶ 37.  LinkedIn was not aware its systems were hacked until the users' information was posted online.  Id. ¶ 38.

Consumers value security and are willing to pay a premium for stronger privacy protections, but expect increased data security and privacy in return.  See id. ¶¶ 56-58.  Plaintiffs allege LinkedIn's Privacy Policy misrepresented its security protocols, describing "industry-standard security protocols" in its membership agreement.  See id. ¶¶ 24, 29.  They bring a novel "overpayment" theory of damages, alleging that they did not get the value of services they paid for.  See id. ¶¶ 62, 64.  Plaintiff alleges that had LinkedIn adequately represented its security protocols, users would have attempted to purchase a premium subscription at a lower price or not at all.  See id. ¶¶ 64-65, 76.

On June 15, 2012, Katie Szpyrka initiated an action in this court.  Dkt. No. 1.  On August 29, 2012, the Court consolidated this case with three similar suits, granted Plaintiff's leave to file an Amended and Consolidated Class Complaint, and appointed Jay Edelson of Edelson McGuire, LLC as Interim Lead Class Counsel.  See Dkt. No. 40.

On November 26, 2012, in response to LinkedIn's motion, Plaintiffs filed an Amended Consolidated Complaint adding Khalilah Wright as a plaintiff and bringing claims on behalf of two classes: (1) individuals and entities that paid LinkedIn a monthly fee for a premium account, and (2) individuals whose personal information was compromised as a result of the data breach.  See Dkt. No. 54 ¶ 54.  On December 20, 2012, Defendant filed a motion to dismiss the Amended

United States District Court
Northern District of California

1  Consolidated Complaint arguing that Plaintiffs lacked standing to pursue their claims, which, after

2  full briefing and oral argument, the Court granted on March 5, 2013 with leave to re-plead.  See

3  Dkt. Nos. 59–61, 64, 67, 69–70.

4  On April 30, 2013, Plaintiff Wright filed a Second Amended Consolidated Class Action

5  Complaint ("SAC").  Dkt. 78.  The SAC pleaded three causes of action - one under each of the

6  "fraud" and "unfair" prongs of the UCL, and one claim for breach of contract based on LinkedIn's

7  statements regarding data security standards in its Privacy Policy.  See id. ¶¶ 70-76.  On June 13,

8  2013, Defendant moved to dismiss the SAC, arguing that Plaintiff lacked Article III standing, and

9  that she failed to state a claim for relief for each of her causes of action.  Dkt. No. 81.  On March

10  28, 2014, the Court granted in part and denied in part LinkedIn's Motion to Dismiss after another

11  round of complete briefing and oral argument.  Dkt. Nos. 81–84, 87, 89, 94, 97–98, 100.  On April

12  11, 2014, LinkedIn answered the SAC.  Dkt. No. 101.

13  On January 29, 2015, the Court granted the parties motion for preliminary approval of the

14  settlement.  See Dkt. No. 136.  These motions were filed upon completion of the notice plan.

15  The Court also received six written objections to the settlement from Ronald Haire, Tom Lasken,

16  Mark Firmani, David Ferreira, Eric Melin and Matthew Fonk.  Dkt. Nos. 137-140, 142, 144.  A

17  hearing addressing final approval was held on June 18, 2015.

18  **B.    The Settlement Agreement**

19  After a mediation overseen by mediator John Bates of JAMS, the parties reached a

20  proposed settlement agreement executed on August 14, 2014.  See Dkt. No. 145, Exh 1

21  ("Settlement Agreement").  The key terms of the Settlement Agreement are briefly summarized as

22  follows:

23  **i.    Class Definition**

24  The Class is defined as: "All persons in the United States who paid a fee to LinkedIn for a

25  premium subscription at any time between March 15, 2006 and June 7, 2012."  The Settlement

26  Class excludes any class members who have submitted a timely and valid request for exclusion.

27  The size of the class amounts to approximately 800,000 individuals.  See Settlement Agreement

28  

Case No.: 5:12-cv-03088-EJD
ORDER GRANTING MOTION FOR FINAL APPROVAL OF CLASS ACTION; GRANTING
MOTION FOR ATTORNEY FEES, COSTS AND INCENTIVE AWARD

*United States District Court*
*Northern District of California*

1  §§ 1.31-1.32.

2        **ii.**    **Settlement Fund**

3      LinkedIn has agreed to pay a total amount of $1,250,000 into a settlement fund.  Id. § 1.32.

4  The Fund will be used for payments to Class Settlement Members (approved claims and *cy pres*

5  reversions), all settlement administration expenses, attorney's fees and the incentive award to

6  Plaintiff.  Id.  Any funds that may remain after payment will not revert to LinkedIn.  See Dkt. No.

7  145 ("Motion for Settlement") at § 2(B).

8        **iii.**    **Settlement Administration Expenses**

9      Plaintiff has calculated these notice and settlement administration costs to be $140,000, a

10  $40,000 decrease from the amount contemplated in the Settlement Agreement, to be added to

11  Plaintiff's refunds.  See id. § 3.

12        **iv.**    **Monetary Relief**

13      Each member of the Settlement Class who has submitted a valid claim form will receive a

14  *pro rata* share of the Settlement Fund following payment of notice and administrative costs,

15  attorney's fees and the incentive award.  Id. § 2.  Class counsel estimates that $700, 891.33 remain

16  in the Settlement Fund to pay member claims; the 47, 3336 valid claims received by the deadline

17  indicate each claimant will receive about $14.81.  Id.  The Settlement Administrator shall

18  distribute funds to all Settlement Class Members with approved claims within fifty-six (56) days

19  of the Final Settlement Date.  See id. § 2.1.

20        **v.**    **Incentive Award and Attorneys' Fees**

21      Plaintiff requests an incentive award of $7,500.  See id. § 8.3.  Plaintiff also requests the

22  Court to approve attorneys' fees of $375,000 and reimbursable expenses of $26,608.67, or about

23  32% of the settlement fund.  See id. § 8.1.

24        **vi.**    **Cy Pres Distribution**

25      Although payments to class members are expected to exhaust the Settlement Fund, any

26  remaining funds will be distributed to the *Cy Pres* Recipients: Center for Democracy and

27  Technology, the World Privacy Forum and the Carnegie Mellon CyLab Usable Privacy and

28

Case No.: 5:12-cv-03088-EJD
ORDER GRANTING MOTION FOR FINAL APPROVAL OF CLASS ACTION; GRANTING
MOTION FOR ATTORNEY FEES, COSTS AND INCENTIVE AWARD

United States District Court
Northern District of California

1    Security Laboratory.  See id. § 1.8; see also Motion for Settlement § 2.  Any checks given to

2    Settlement Class Members uncashed ninety (90) days after issuance will be voided and revert to

3    the Settlement Fund for *cy pres* distribution.  See Settlement Agreement § 2.1(e).

4              **vii.    Injunctive relief**

5         The Settlement Agreement requires LinkedIn to employ both "salting" and "hashing" (or

6    an equivalent or greater form of security) to protect user's passwords for five (5) years after the

7    Final Settlement Date.  LinkedIn is responsible for all costs associated with the implementation of

8    this relief.  Id. § 2.2.

9              **viii.    Release of Claims**

10        In exchange for the relief explained above, the Settlement Agreement provides that

11   LinkedIn will be released from any claims arising out of, relating to, or regarding the alleged

12   retention and disclosure of Plaintiff's and the Settlement Class' personal and financial

13   information.  See id. § 3.1.  Plaintiff also discharges LinkedIn from all released, unknown or any

14   other claims.  See id. § 3.2.

15   **II.    LEGAL STANDARD**

16        A class action may not be settled without court approval.  Fed. R. Civ. P. 23(e).  "If the

17   proposal would bind class members, the court may approve it only after a hearing and on finding

18   that it is fair, reasonable, and adequate."  Id.  When the parties to a putative class action reach a

19   settlement agreement prior to class certification, "courts must peruse the proposed compromise to

20   ratify both the propriety of the certification and the fairness of the settlement."  Staton v. Boeing

21   Co., 327 F.3d 938, 952 (9th Cir. 2003).  "[J]udges have the responsibility of ensuring fairness to

22   all members of the class presented for certification."  Id.

23        The law favors the compromise and settlement of class action suits.  See Churchill Vill.,

24   LLC v. Gen. Elec., 361 F.3d 566, 576 (9th Cir. 2004); Class Plaintiffs v. City of Seattle, 955 F.2d

25   1268, 1276 (9th Cir. 1992); Officers for Justice v. Civil Serv. Comm'n, 688 F.2d 615, 625 (9th

26   Cir. 1982).  "[T]he decision to approve or reject a settlement is committed to the sound discretion

27   of the trial judge because he is exposed to the litigants and their strategies, positions, and proof."

28   

United States District Court
Northern District of California

1   Hanlon v. Chrysler Corp., 150 F.3d 1011, 1026 (9th Cir. 1998).

2       First, the district court must assess whether a class exists under Federal Rule of Civil

3   Procedure 23(a) and (b).  Amchem Prods. Inc. v. Windsor, 521 U.S. 591, 620 (1997).  Second, the

4   district court must carefully consider "whether a proposed settlement is fundamentally fair,

5   adequate, and reasonable" pursuant to Federal Rule of Civil Procedure 23(e), recognizing that "[i]t

6   is the settlement taken as a whole, rather than the individual component parts, that must be

7   examined for overall fairness."  Hanlon, 150 F.3d at 1026.

8       An objector to a proposed settlement agreement bears the burden of proving any assertions

9   they raise challenging the reasonableness of a class action settlement.  United States v. Oregon,

10  913 F.2d 576, 581 (9th Cir. 1990).  The court iterates that the proper standard for approval of the

11  proposed settlement is whether it is fair, reasonable, adequate, and free from collusion - not

12  whether the class members could have received a better deal in exchange for the release of their

13  claims.  See Hanlon, 150 F.3d at 1027.

14  **III.    DISCUSSION**

15      **A.    Class Certification**

16      The Federal Rules of Civil Procedure describe four preliminary requirements for class

17  certification: (1) numerosity; (2) commonality; (3) typicality; and (4) adequacy of representation.

18  See Fed. R. Civ. P. 23(a)(1)-(4).  If these are satisfied, the court must then examine whether the

19  requirements of Rule 23(b)(1), (b)(2), or (b)(3) are satisfied.  Wal-Mart Stores, Inc. v. Dukes, 131

20  S. Ct. 2541, 2548-49 (2011).

21      The Rule 23 requirements are more than "a mere pleading standard."  Id.  The class

22  representations are subjected to a "rigorous analysis" which compels the moving party to

23  "affirmatively demonstrate . . . compliance with the rule - that is, he must be prepared to prove that

24  there are in fact sufficiently numerous parties, common questions of law or fact, etc."  Id.

25      The Court first assesses whether a class exists under Federal Rule of Civil Procedure 23(a)

26  and (b).

27

28

Case No.: 5:12-cv-03088-EJD
ORDER GRANTING MOTION FOR FINAL APPROVAL OF CLASS ACTION; GRANTING
MOTION FOR ATTORNEY FEES, COSTS AND INCENTIVE AWARD

United States District Court
Northern District of California

### i.   Rule 23(a)

Rule 23(a)(1) provides that a class action may be maintained only if "the class is so numerous that joinder of all parties is impracticable." Fed. R. Civ. P. 23(a)(1). In this context, "impracticability" is not equated with impossibility; it is only an apparent difficulty or inconvenience from joining all members of the class. Harris v. Palm Springs Alpine Estates, Inc., 329 F.2d 909, 913-14 (9th Cir. 1964). Moreover, satisfaction of the numerosity requirement is not dependent upon any specific number of proposed class members, but "where the number of class members exceeds forty, and particularly where class members number in excess of one hundred, the numerosity requirement will generally be found to be met." Int'l Molders' & Allied Workers' Local 164 v. Nelson, 102 F.R.D. 457, 461 (N.D. Cal. 1983).

Here, based on information provided by LinkedIn, there are approximately 800,000 individuals who paid a fee to LinkedIn for a premium subscription between March 15, 2006 and June 7, 2012. See Dkt. No. 122-2 ("Edelson Decl.") ¶ 4. Based on that representation, the Court finds that Plaintiffs have made an adequate showing of numerosity.

Turning to Rule 23(a)(2), this section requires that "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). Commonality is demonstrated when the claims of all class members "depend upon a common contention," with "even a single common question" sufficing. Dukes, 131 S. Ct. at 2545, 2557. The common contention must be of such a nature that it is capable of class-wide resolution, and that the "determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." Dukes, 131 S. Ct. at 2545. Moreover, the permissive standard of commonality provides that "[w]here the circumstances of each particular class member vary but retain a common core of factual or legal issues with the rest of the class, commonality exists." Parra v. Bashas', Inc., 536 F.3d 975, 978–79 (9th Cir. 2008).

Here, the class shares identical statutory claims under the UCL premised on Plaintiff's allegations that LinkedIn failed to take steps to adequately protect its users' personal information, despite promises in its privacy policy that it would. See Dkt. No. 78 ¶ 28-29. Plaintiff alleges that

Case No.: 5:12-cv-03088-EJD
ORDER GRANTING MOTION FOR FINAL APPROVAL OF CLASS ACTION; GRANTING
MOTION FOR ATTORNEY FEES, COSTS AND INCENTIVE AWARD

1    LinkedIn made the same security representation to each class member - that "[p]ersonal

2    information [users] provide[d would] be secured with industry standards and technology" - and

3    had the same security deficiencies (i.e., failure to salt and properly hash) throughout the class

4    period.  See Dkt. No. 81 at 5.  The Court agrees that answering these questions, regardless of the

5    outcome, will resolve the allegations for the whole class "in one stroke," thereby effectuating class

6    wide resolution.  Thus, the Court finds this case meets the commonality requirement of Rule

7    23(a)(2).

8            Rule 23(a)(3) requires that the class representative's claims be typical of those of the

9    putative class she seeks to represent.  Fed. R. Civ. P. 23(a)(3).  The typicality requirement ensures

10   that "the interest of the named representative aligns with the interests of the class."  Wolin v.

11   Jaguar Land Rover N. Am. LLC, 617 F.3d 1168, 1175 (9th Cir. 2010).  Typicality is measured

12   under a permissive standard and does not require that the representative's claims be substantially

13   identical, but only that they are "reasonably co-extensive with [the claims] of absent class

14   members . . . ."  Hanlon, 150 F.3d at 1020.  Typicality is present when a defendant acts uniformly

15   toward the class members, where that uniform conduct results in injury to the class members, and

16   where the named plaintiffs suffer a similar injury to that of the class members as a result.  Hanon

17   v. Dataproducts Corp., 976 F.2d 497, 508 (9th Cir. 1992).

18           Here, Plaintiff has the same claims and interests as the settlement class.  Every member of

19   the proposed settlement class, including Plaintiff, paid LinkedIn for a "premium" subscription,

20   they were all presented with the same allegedly material misrepresentations about Defendant's

21   data security practices.  As such, the typicality requirement is satisfied.  See Estrella v. Freedom

22   Fin. Network, LLC, No. 09-cv-3156, 2010 WL 2231790, at *10 (N.D. Cal. June 2, 2010)

23   ("[B]ecause plaintiffs' allegations are amenable to proving reliance on a class wide basis, and

24   because [defendant] does not argue that any of its customers received disclosure statements that

25   were materially different from those received by the named plaintiffs, [plaintiffs] are typical of the

26   proposed class.").

27           Finally, Rule 23(a)(4) requires that the proposed class representative has and will continue

28

United States District Court
Northern District of California

8

to "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4).  To determine if representation is in fact adequate, the court must ask "(1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" Hanlon, 150 F.3d at 1020.

Here, Plaintiff meets the requirements to be named class representative in this case.  First, as discussed above, Plaintiff shares the same interests in securing relief for the claims in this case as every other member of the proposed settlement class and there is no evidence of any conflict of interest.  Plaintiff has demonstrated her continued willingness to vigorously prosecute this case and has regularly consulted with her counsel, has aided in the prosecution of the litigation, has reviewed documents and the proposed settlement, and has indicated her desire to continue protecting the interests of the class though settlement or continued litigation.  See Edelson Decl. ¶ 8.  As to the second question, class counsel has regularly engaged in major complex litigation, and has extensive experience in consumer privacy class action lawsuits, and has been appointed class counsel in similar cases.[1]  As such, the Court is satisfied that Plaintiff and class counsel will adequately represent the members of the Settlement Class and their interests.

### ii.   Rule 23(b)

Rule 23(b)(3) provides that a class action can be maintained where: (1) the questions of law and fact common to members of the class predominate over any questions affecting only individuals; and (2) the class action mechanism is superior to the other available methods for the fair and efficient adjudication of the controversy.  Fed. R. Civ. P. 23(b)(3); Pierce v. Cnty. of Orange, 526 F.3d 1190, 1197 n.5 (9th Cir. 2008).  Certification under Rule 23(b)(3) is appropriate and encouraged "whenever the actual interests of the parties can be served best by settling their differences in a single action." Hanlon, 150 F.3d at 1022.

---

[1] See Harris v. comScore, Inc., No. 11-cv-5807 (N.D. Ill. June 6, 2014); Resnick v. Avmed, No. 10-cv-24513 (S.D. Fla. Oct. 25, 2013); Standiford v. Palm, No. 5:09-cv-05719-LHK (N.D. Cal. Jan. 26, 2012).

Case No.: 5:12-cv-03088-EJD
ORDER GRANTING MOTION FOR FINAL APPROVAL OF CLASS ACTION; GRANTING MOTION FOR ATTORNEY FEES, COSTS AND INCENTIVE AWARD

United States District Court
Northern District of California

1    Predominance exists "[w]hen common questions present a significant aspect of the case

2    and they can be resolved for all members of the class in a single adjudication . . . ." Hanlon, 150

3    F.3d at 1022.  Here, the common factual and legal questions presented are: (a) whether LinkedIn

4    failed to protect its users' PII with industry-standard protocols and technologies; (b) whether the

5    allegedly false promises LinkedIn made in its privacy policies are material; and (c) whether the

6    security representations contained in LinkedIn's privacy policy, in light of the actual state of

7    LinkedIn's security practices, constitute a violation of the UCL.  See Dkt. No. 122 at 12.  These

8    common questions can be resolved for all members of the proposed class in a single adjudication,

9    and are the central focus of this class action.  Accordingly, the Court finds the predominance

10   requirement satisfied.

11   Finally, to meet the requirement of superiority, a plaintiff must show that a class action is

12   the "most efficient and effective means of resolving the controversy."  Wolin, 617 F.3d at 1175–

13   76.  "Where recovery on an individual basis would be dwarfed by the cost of litigating on an

14   individual basis, this factor weighs in favor of class certification."  Id. at 1175.  Moreover, the

15   class action mechanism is superior to individual actions in consumer cases with thousands of

16   members as "Rule 23(b)(3) was designed for situations such as this . . . in which the potential

17   recovery is too slight to support individual suits, but injury is substantial in the aggregate."

18   Holloway v. Full Spectrum Lending, No. 06-cv-5975, 2007 WL 7698843, at *9 (C.D.

19   Cal. June 26, 2007).

20   Here, the settlement class is comprised of approximately 800,000 persons and, if each were

21   to pursue their claims against LinkedIn individually, they would each need to provide nearly the

22   same legal and factual arguments and evidence.  The result would be thousands of trials at

23   enormous expense to the proposed class members, LinkedIn, and the courts.  Where, as here,

24   individual recoveries for Plaintiff and the proposed class would be small and, but for the class

25   action, would likely not even be pursued.  See Chamberlan v. Ford Motor Co., 223 F.R.D. 524,

26   527 (N.D. Cal. 2004).  For these reasons, the Court finds that a class action is the superior method

27   of resolving the claims of all the members.

28
10

United States District Court
Northern District of California

1          Accordingly, as all requirements of class certification under Rule 23 are met, the

2    settlement class will be certified for the purposes of settlement.

3          **B.       Appropriateness of the Notice Plan**

4          Rule 23(c)(2)(B) requires "the best notice that is practicable under the circumstances,

5    including individual notice to all members who can be identified through reasonable effort." Fed.

6    R. Civ. P. 23(c)(2)(B).  Such notice must "clearly and concisely state in plain, easily understood

7    language," the nature of the action, the class definition, and class members' right to exclude

8    themselves from the class, among other things.  Fed. R. Civ. P. 23(c)(2)(B).  Further, before

9    granting final approval to a proposed class settlement, the court must "direct notice in a reasonable

10   manner to all class members who would be bound by the proposal."  Fed. R. Civ. P. 23(e)(1).

11   While Rule 23 requires that reasonable efforts be made to reach all class members, it does not

12   require that each individual actually receive notice.  Silber v. Mabon, 18 F.3d 1449, 1454 (9th Cir.

13   1994); see also Rannis v. Recchia, 380 F. App'x 646, 650 (9th Cir. 2010).

14         Here, the Court approved the notice plan set forth in the Settlement Agreement, which

15   primarily called for direct notice by e-mail to all members of the Settlement Class to the addresses

16   used in connection with their LinkedIn premium accounts, as well as the creation of a detailed

17   settlement website (the "Notice Plan").  Dkt. No. 136 at 4; Settlement Agreement § 4.1.  The

18   settlement website allowed class members to file a claim online, and the e-mail notice was twice

19   sent to class members and included a link to the online claim form.  Settlement Agreement § 4.1.

20   Additionally, individual notice was especially accessible, since Defendant had access to class

21   members' primary email addresses.  See Settlement Agreement § 4.1(a).  Accordingly, the Court

22   approved a notice plan involving direct email notice, a settlement website and a toll-free telephone

23   number, as consistent with Rule 23(c)(2)(B).  See Dkt. No. 136 at 3-5.

24         The settlement website has had over 100,000 unique visitors.  See Gardella Decl. ¶ 10.  On

25   February 20, 2015, and again on March 30, 2015, LinkedIn emailed the Court-approved summary

26   notice to all 797,757 class members.  See Bailey Decl. ¶¶ 3–7.  LinkedIn confirmed that 97% of

27   the class successfully received the first email and 96% of the class successfully received the

28

Case No.: 5:12-cv-03088-EJD
ORDER GRANTING MOTION FOR FINAL APPROVAL OF CLASS ACTION; GRANTING
MOTION FOR ATTORNEY FEES, COSTS AND INCENTIVE AWARD

United States District Court
Northern District of California

1    second one.  Id. at 5-7.  The Court again finds that the notice plan and class notices are consistent

2    with Rule 23, and that the plan has been fully and properly implemented by the parties and the

3    class administrator.

4         **C.    Fairness of the Settlement**

5         Before approving a class action settlement, the Court must find the settlement "fair,

6    reasonable, and adequate."  Fed. R. Civ. P. 23(e)(2); In re Online DVD-Rental Antitrust Litig.,

7    779 F.3d 934, 944 (9th Cir. 2015).  To assess the fairness of a settlement, courts look to the eight

8    so-called Churchill factors:

9                    (1) the strength of the plaintiff's case; (2) the risk, expense,
                    complexity, and likely duration of further litigation; (3) the risk of
10                   maintaining class action status throughout the trial; (4) the amount
                    offered in settlement; (5) the extent of discovery completed and the
11                   stage of the proceedings; (6) the experience and view of counsel; (7)
                    the presence of a governmental participant; and (8) the reaction of
12                   the class members to the proposed settlement.

13   Online DVD-Rental, 779 F.3d at 944. (quoting Churchill Vill., L.L.C. v. Gen. Elec., 361 F.3d 566,

14   575 (9th Cir. 2004)).  When, as here, settlement occurs before formal class certification, "[t]he

15   district court's approval order must show not only that it has explored the Churchill factors

16   comprehensively, but also that the settlement is not the product of collusion among the negotiating

17   parties."  In re Bluetooth Headset Prods. Liab. Litig., 654 F.3d 935, 946–47 (9th Cir. 2011).

18        **i.    Strength of Plaintiffs' Case**

19        In assessing the strength of a plaintiff's case, "there is no 'particular formula by which

20   th[e] outcome must be tested.'"  Bellinghausen v. Tractor Supply Co., No. 13-cv-02377-JSC, 2015

21   WL 1289342, at *5 (N.D. Cal. Mar. 20, 2015).  Rather, "the court's assessment of the likelihood

22   of success is 'nothing more than an amalgam of delicate balancing, gross approximations and

23   rough justice.'"  Id.  The court may "presume that through negotiation, the Parties, counsel, and

24   mediator arrived at a reasonable range of settlement by considering Plaintiff's likelihood of

25   recovery."  Garner v. State Farm Mutual Auto. Ins. Co., No. 08-CV-1365-CW, 2010 WL

26   1687832, at *9 (N.D. Cal. April 22, 2010).

27        Here, Plaintiffs claim that they proceeded on a relatively novel theory of liability and

28   Case No.: 5:12-cv-03088-EJD
     ORDER GRANTING MOTION FOR FINAL APPROVAL OF CLASS ACTION; GRANTING
     MOTION FOR ATTORNEY FEES, COSTS AND INCENTIVE AWARD

1    damages in a data breach case – that LinkedIn promised and class members paid for "industry

2    standard" data security, which LinkedIn failed to provide.  Cf. Resnick v. AvMed, Inc., 693 F.3d

3    1317, 1328 (11th Cir. 2012) (accepting overpayment theory of liability in data breach case).

4    Specifically, Plaintiffs' claim does not assert that class members were necessarily harmed by the

5    data breach, but that they overpaid for their premium LinkedIn subscription because they did not

6    receive promised data security.

7        In addition to requiring this Court's acceptance of Plaintiffs' overpayment theory, to

8    survive summary judgment and succeed at trial Plaintiff would need to establish both what

9    constitutes "industry standard" data security, and the amount of the total LinkedIn subscription

10   price that constituted payment for such data security.  Proving each would have entailed a "battle

11   of the experts," the outcome of which is in no way guaranteed.

12       Consequently, because ultimate success at trial is far from certain, this factor weighs

13   strongly in favor of the settlement.  See Bayat v. Bank of the W., No. C-13-2376 EMC, 2015 WL

14   1744342, at *3 (N.D. Cal. Apr. 15, 2015) ("Because the strength of Plaintiffs' claims is in doubt,

15   the first Churchill factor tips in favor of final approval of the settlement.").

16           **ii.    The Risk, Expense, and Complexity of Continued Litigation**

17        "Generally, unless the settlement is clearly inadequate, its acceptance and approval are

18   preferable to lengthy and expensive litigation with uncertain results." Ching v. Siemens Indus.,

19   Inc., No. 11-cv-04838-MEJ, 2014 WL 2926210, at *4 (N.D. Cal. June 27, 2014).  Immediate

20   receipt of money through settlement, even if lower than what could potentially be achieved

21   through ultimate success on the merits, has value to a class, especially when compared to risky

22   and costly continued litigation.  See LaGarde v. Support.com, Inc., No. C 12-0609 JSC, 2013 WL

23   1283325, at *4 (N.D. Cal. Mar. 26, 2013).

24       Here, continued litigation would be both risky and costly.  First, the hurdles to ultimate

25   success on the merits noted above make the outcome of continued litigation uncertain and present

26   "a significant risk that litigation might result in a lesser recover[y] for the class or no recovery at

27   all." Bellinghausen, 2015 WL 1289342, at *5.

28

United States District Court
Northern District of California

Case No.: 5:12-cv-03088-EJD
ORDER GRANTING MOTION FOR FINAL APPROVAL OF CLASS ACTION; GRANTING
MOTION FOR ATTORNEY FEES, COSTS AND INCENTIVE AWARD

Second, continued litigation would be costly, in terms of both time and money because LinkedIn has steadfastly maintained that it would vigorously defend this case to judgment and beyond.  See Ching, 2014 WL 2926210, at *4.  Continued litigation would thus involve significant fact and expert discovery into, among other things, technical issues such as what constitutes standard industry security practices and whether LinkedIn followed such standards, as well as summary judgment briefing on those questions.  See LaGarde, 2013 WL 1283325, at *4.  In addition, the losing party is likely to appeal, further raising the costs in terms of both time and money.  See Bayat, 2015 WL 1744342, at *4.

Because continued litigation would be risky, costly, complex, and long, this factor favors settlement.  Curtis–Bauer v. Morgan Stanley & Co., Inc., No. 06–C–3903 TEH, 2008 WL 4667090, at *4 (N.D. Cal. Oct. 22, 2008) ("Settlement avoids the complexity, delay, risk and expense of continuing with the litigation and will produce a prompt, certain, and substantial recovery for the Plaintiff class.").

### iii.   The Risk of Maintaining Class Action Status

Although a class can be certified for settlement purposes, the notion that a district court could decertify a class at any time is an inescapable and weighty risk that weighs in favor of a settlement.  See Rodriguez v. West Publ'g Corp., 563 F.3d 948, 966 (9th Cir. 2009).  Here, from the outset of this litigation, LinkedIn has challenged the ability of Plaintiff to proceed on a class basis.  See Dkt. No. 101 at 12-13, 21.  In addition, there is a chance that, should litigation continue and LinkedIn opposes class certification, the action would not be maintained as a class.  Thus, the risk of never obtaining or losing class status in the absence of settlement weighs in favor of approval.

### iv.   The Amount Offered in Settlement

The fourth Churchill factor "is generally considered the most important."  Bayat, 2015 WL 1744342, at *4.  Here, in addition to the prospective relief correcting the alleged data protection deficiencies, class members who submitted valid claims will each receive approximately $14.81 from the Settlement Fund.  After court-approved payments, the remainder of the fund will be

14

Case No.: 5:12-cv-03088-EJD
ORDER GRANTING MOTION FOR FINAL APPROVAL OF CLASS ACTION; GRANTING MOTION FOR ATTORNEY FEES, COSTS AND INCENTIVE AWARD

1    distributed to *cy pres* recipients in proportions designated by Plaintiffs' counsel.

2          In support of final approval, Plaintiffs point out that the amount of the agreed-upon

3    settlement fund compares favorably to that of other similar class actions.  Lane v. Facebook, Inc.,

4    696 F.3d 811, 820–22 (9th Cir. 2012) cert. denied, 134 S. Ct. 8 (2013) (approving settlement

5    providing a $9.5 million cy pres payment as the sole monetary relief in case where statutory

6    damages of up to $10,000 per claim were available); In re Google Buzz Privacy Litig., No. C 10-

7    00672 JW, 2011 WL 7460099, at *3–5 (N.D. Cal. June 2, 2011) (approving settlement providing

8    an $8.5 million cy pres payment as the sole monetary relief in case where statutory damages of up

9    to $10,000 per claim were available); Johansson-Dohrmann v. Cbr Sys., Inc., No. 12-cv-1115,

10   2013 WL 3864341, at *2 (S.D. Cal. July 24, 2013) (establishing a $2.5 million fund to provide

11   class members with two years of credit monitoring and identity theft reimbursement).

12         Further, the $14.81 per claimant represents a significant portion of the recovery that class

13   members could expect if they were to achieve total victory at trial.  This means that class members

14   are receiving at least 30% of what they could expect to receive at trial.  See Bellinghausen, 2015

15   WL 1289342, at *6–7 (stating that it is "well-settled law that a proposed settlement may be

16   acceptable even though it amounts to only a fraction of the potential recovery that might be

17   available to class members at trial," and approving settlement representing between 11% and 27%

18   of potential recovery).  As such, this factor favors settlement.

19         **v.    The Extent of Discovery Completed and the Stage of the Proceedings**

20         This factor "evaluates whether 'the parties have sufficient information to make an

21   informed decision about settlement.'"  Larsen, 2014 WL 3404531, at *5.  Formal discovery is not

22   a requirement for final settlement approval; "[r]ather, the court's focus is on whether the parties

23   carefully investigated the claims before reaching a resolution."  Bellinghausen, 2015 WL

24   1289342, at *7.

25         Here, the parties investigated the claims before settling, and had sufficient information to

26   make an informed decision.  Specifically, the settlement comes after almost three years of

27   litigation, which included the formal and informal exchange of documents, briefing on two

28

Case No.: 5:12-cv-03088-EJD
ORDER GRANTING MOTION FOR FINAL APPROVAL OF CLASS ACTION; GRANTING
MOTION FOR ATTORNEY FEES, COSTS AND INCENTIVE AWARD

United States District Court
Northern District of California

motions to dismiss, consultation with and a declaration from an expert, formal mediation before a third-party neutral, extensive mediation briefing, and several months of settlement negotiations. See Dkt. No. 141 at 3-5. All of this information allowed the parties to make reasoned and informed settlement decisions. See Bellinghausen, 2015 WL 1289342, at *7 (factor supported approval where parties had litigated multiple motions to dismiss, engaged in formal and informal discovery, produced and analyzed hundreds of pages of documents, prepared detailed mediation briefs, and participated in mediation). As such, this factor weighs in favor of settlement.

### vi.    The Experience and Views of Counsel

"Parties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in litigation." Rodriguez, 563 F.3d at 967. Consequently, "'[t]he recommendations of plaintiffs' counsel should be given a presumption of reasonableness.'" In re Omnivision Techns., Inc., 559 F. Supp. 2d 1036, 1043 (N.D. Cal. 2009). Class counsel has extensive experience prosecuting and settling class actions, including in the field of consumer privacy. Dkt. No. 141-1 ¶ 18. In addition, class counsel believes the settlement is in the best interests of the class, especially in light of the potential risks and rewards of continued litigation. Dkt. No. 141-1 ¶ 19. Consequently, this factor favors approval of settlement.

### vii.    The Presence of a Governmental Participant

The Class Action Fairness Act, or "CAFA," requires that notice of a settlement be given to state and federal officials and provides those officials a window of time to comment. 28 U.S.C. § 1715(b). "Although CAFA does not create an affirmative duty for either state or federal officials to take any action in response to a class action settlement, CAFA presumes that, once put on notice, state or federal officials will raise any concerns that they may have during the normal course of the class action settlement procedures." Garner, 2010 WL 1687832, at *14. Here, notice of the proposed settlement was provided to appropriate state and federal officials. See Gardella Decl. ¶¶ 4–5. None of these officials have raised any objection or concern regarding the settlement. Thus, this factor favors the settlement.

United States District Court
Northern District of California

16

1    **viii.    The Reaction of Class Members**

2          A low number of opt-outs and objections in comparison to class size is typically a factor

3    that supports settlement approval.  See Hanlon, 150 F.3d at 1027 ("[T]he fact that the

4    overwhelming majority of the class willingly approved the offer and stayed in the class presents at

5    least some objective positive commentary as to its fairness.").  Here, out of approximately 798,000

6    class members, 47,336 have submitted valid claims, only 57 have timely opted out, and only six

7    have filed objections.[2]  These numbers show an overall positive reaction by the class, which

8    supports final approval.  See Rodriguez, 563 F.3d at 967 (approving district court's finding of

9    "favorable reaction" to settlement where, 52,000 class members submitted claims and 54

10   objected).

11   **ix.    Risk of Collusion among the Negotiating Parties**

12         In addition to examining the eight Churchill factors, when a settlement is reached prior to

13   formal class certification the Court must ensure that the settlement is not the product of collusion.

14   See In re Bluetooth Headset Prods. Liab. Litig., 654 F.3d 935, 946–47.  Collusion may not be

15   evident on its face, thus the Ninth Circuit has provided examples of subtle signs of collusion

16   including: (1) "when counsel receive a disproportionate distribution of the settlement;" (2) "when

17   the parties negotiate a 'clear sailing' arrangement providing for the payment of attorneys' fees

18   separate and apart from class funds;" and (3) "when the parties arrange for fees not awarded to

19   revert to defendants rather than be added to the class fund."  Id. at 947.

20         Here, over $700,000 is being directly distributed to class members and class counsel is

21   seeking $375,000 in fees and less than $27,000 in costs, which collectively represent 32% of the

22   settlement fund.  See Dkt. 137 at 1.  In addition, the settlement does not include a clear sailing

23   agreement, or an agreement "where the party paying the fee agrees not to contest the amount to be

24   awarded by the fee-setting court so long as the award falls beneath a negotiated ceiling," (In re Toys R

25   Us-Delaware, Inc.—Fair and Accurate Credit Transactions Act (FACTA) Litig., 295 F.R.D. 438, 458

26

27   ───────────────
     [2] Two additional opt-outs were submitted after the opt-out deadline.

28   Case No.: 5:12-cv-03088-EJD
     ORDER GRANTING MOTION FOR FINAL APPROVAL OF CLASS ACTION; GRANTING
     MOTION FOR ATTORNEY FEES, COSTS AND INCENTIVE AWARD

United States District Court
Northern District of California

1 (C.D. Cal. 2014)) because LinkedIn expressly reserved the right to contest class counsel's fee request,

2 and has actually done so.  <u>See</u> Agreement § 8.1; <u>see also</u> Dkt. No. 143.  Finally, any remaining funds

3 remain part of the settlement fund to be distributed to class members, or *cy pres* recipient, no amount

4 reverts to LinkedIn.  <u>See</u> Dkt. No. 145 at 14.

5    Consequently, the settlement displays none of the <u>Bluetooth</u> signs suggesting a collusive

6 agreement.  In sum, all of the applicable <u>Churchill</u> factors weigh in favor of finally approving the

7 settlement.

8 **IV. ATTORNEYS FEES, COSTS AND INCENTIVE AWARDS**

9    Class counsel's request for attorneys' fees ($375,000) and expenses ($26,608.67) would

10 constitute almost one-third[3] of the common fund of $1,250,000 that LinkedIn had agreed to pay as

11 part of this settlement.  <u>See</u> Dkt. No. 141 at 1.  Plaintiff argues that the requested fee of 32% of the

12 fund is a reasonable deviation from the benchmark because Class Counsel "achieved exceptional

13 relief for the class."  <u>See id.</u> at 8.  Further, Plaintiffs argue that this amount is reasonable through

14 application of the lodestar method, either as cross-check or as the primary method of calculation,

15 as it is lower than class counsel's lodestar of $380,540.50.  <u>See</u> Dkt. No. 141 at 7.  The Court

16 disagrees that the request is appropriate for the following reasons.

17    An award of attorneys' fees must be reasonable, even if the parties have already agreed to

18 an amount.  <u>In re Bluetooth Headset Prod.s Liab. Litig.</u>, 654 F.3d 935, 941 (9th Cir. 2011).  Courts

19 have discretion to award attorneys' fees to a prevailing plaintiff if: "(1) fee-shifting is expressly

20 authorized by the governing statute; (2) the opponents acted in bad faith or willfully violated a

21 court order; or (3) the successful litigants have created a common fund for recovery or extended a

22 substantial benefit to a class."  <u>Id.</u>

23    "Where a settlement produces a common fund for the benefit of the entire class, courts

24 have discretion to employ either the lodestar method or the percentage-of-recovery method."  <u>Id.</u>

25 at 942.  The former method is routinely used when "the relief sought, and obtained, is often

26

27    ———————————

28 [3] The requested fees and expenses collectively amount to 32% of the common fund.

Case No.: <u>5:12-cv-03088-EJD</u>
ORDER GRANTING MOTION FOR FINAL APPROVAL OF CLASS ACTION; GRANTING
MOTION FOR ATTORNEY FEES, COSTS AND INCENTIVE AWARD

United States District Court
Northern District of California

primarily injunctive in nature and thus not easily monetized." <u>Id.</u>  The figure is calculated "by multiplying the number of hours the prevailing party reasonably expended on the litigation (as supported by adequate documentation) by a reasonable hourly rate for the region and for the experience of the lawyer." <u>Id.</u>  The court can "adjust [the figure] upward or downward by an appropriate positive or negative multiplier reflecting a host of 'reasonableness' factors, including the quality of representation, the benefit obtained for the class, the complexity and novelty of the issues presented, and the risk of nonpayment." <u>Id.</u> at 941-42.  "Foremost among these considerations, however, is the benefit obtained for the class." <u>Id.</u> at 942.

Under the latter method, the court awards as fees a percentage of the common fund in lieu of the lodestar amount. <u>Id.</u>  "[C]ourts typically calculate 25% of the fund as the 'benchmark' for a reasonable fee award, providing adequate explanation in the record of any 'special circumstances' justifying a departure." <u>Id.</u>  Relevant factors to a determination of the percentage ultimately awarded include: "(1) the results achieved; (2) the risk of litigation; (3) the skill required and quality of work; (4) the contingent nature of the fee and the financial burden carried by the plaintiffs; and (5) awards made in similar cases." <u>Tarlecki v. bebe Stores, Inc.</u>, No. C 05–1777 MHP, 2009 WL 3720872, at *4 (N.D. Cal. Nov. 3, 2009).

"Though courts have discretion to choose which calculation method they use, their discretion must be exercised so as to achieve a reasonable result." <u>Id.</u>

### A.     Percentage of the Fund

Class counsel seeks $375,000 in attorney fees and $26,608.67 in expenses, which collectively amount to 32% of the common settlement fund. <u>See</u> Dkt. No. 141 at 1.  According to counsel, the combination of the monetary and prospective data security protection provided for under the settlement is not only exceptional on its face, but is particularly so when compared to the relief secured in other data breach cases where the relief consists almost exclusively of either *cy pres* payments, credit monitoring, or reimbursement for provable instances of identity theft. <u>See</u> Dkt. No. 141 at 9.

Class counsel also believe that they undertook substantial risk because the case approached

19

United States District Court
Northern District of California

1   a data breach from a novel angle and therefore involved an issue of first impression regarding

2   what "industry standard" data security entails and whether LinkedIn's procedures during the

3   class period met those standards.  In addition, they assert that by agreeing to litigate this case on a

4   purely contingent basis given the unsettled legal issues, and, investing both substantial time and

5   resources was a risk of receiving nothing in return.  Finally, counsel points out that they

6   successfully coordinated several cases, pursued novel theories of recovery with the assistance of

7   an expert at the pleading stage, and were able to successfully resolve this case through a settlement

8   that confers unprecedented monetary and prospective relief to the class.  See Dkt. No. 141 at 8-11.

9       Having considered the relevant factors, the Court disagrees that this action posed a

10  substantial risk and required significant time and skill to obtain a result for the class.  While the

11  Class counsel skillfully and professionally prosecuted this action, the Court does not believe the

12  facts of this case warrant a departure from the Ninth Circuit's established benchmark of 25%.  See

13  In re Online DVD-Rental Antitrust Litig., 779 F.3d 934, 949 (9th Cir. 2015) ('Under the

14  percentage-of-recovery method, the attorneys' fees equal some percentage of the common

15  settlement fund; in this circuit, the benchmark percentage is 25%); see also In re Netflix Privacy

16  Litig., 2013 WL 1120801, at *9-10.  Accordingly, a benchmark fee award of amounting to 25% or

17  $312,500 of the settlement fund is appropriate.

18      **B.    Lodestar Comparison**

19      The Ninth Circuit encourages district courts "to guard against an unreasonable result" by

20  cross-checking attorney's fees calculations against a second method.  In re Bluetooth, 654 F.3d at

21  944.  The reasonableness of the rates is judged in comparison to the prevailing rates in the

22  community, which here is Bay Area in Northern District of California, for similar work performed

23  by attorneys with similar skills and experience.  In re Magsafe Apple Power Adapter Litig., No.

24  5:09-CV-01911-EJD, 2015 WL 428105, at *11 (N.D. Cal. Jan. 30, 2015) (quoting Gonzalez v.

25  City of Maywood, 729 F.3d 1196, 1205 (9th Cir. 2013); see also Wren v. RGIS Inventory

26  Specialists, No. 06-cv-05778-JCS, 2011 WL 1230826, at *18 (N.D. Cal. April 1, 2011).  "In fact,

27  it is appropriate to both calculate attorneys' fees at prevailing rates to compensate for delay in

28

Case No.: 5:12-cv-03088-EJD
ORDER GRANTING MOTION FOR FINAL APPROVAL OF CLASS ACTION; GRANTING
MOTION FOR ATTORNEY FEES, COSTS AND INCENTIVE AWARD

United States District Court
Northern District of California

United States District Court
Northern District of California

1  receipt of payment as well as apply a multiplier to the lodestar calculation … to account for class

2  counsel's substantial risk of non-payment in prosecuting the action." In re Magsafe Apple Power

3  Adapter Litig., 2015 WL 428105, at *11 (citing Vizcaino, 290 F.3d at 1051).  In the Bay Area,

4  "reasonable hourly rates for partners range from $560 to $800, for associates from $285 to $510,

5  and for paralegals and litigation support staff from $150 to $240."  Id.

6        In their fee petition, Class counsel put forth an adjusted lodestar figure of $380,540.50 for

7  917.5 billing hours.  See Dkt. No. 141 at 7.  They also seek compensation for total costs of

8  $26,608.67.  The hourly rates charged by attorneys range from $335 to $685.  See id.  Altogether,

9  the average hourly rate for all work performed is $490.83.

10        Here, Plaintiffs assert that the actual attorney time incurred in this matter well exceeds the

11  lodestar put forth because counsel removed duplicative entries and limited the applicable attorney

12  hours to those logged by the six attorneys primarily responsible for prosecuting Plaintiffs' and

13  Class claims.  See Dkt. No. 141 at 14-17.  The Court recognizes that the results obtained were not

14  insignificant and that counsel also went to great lengths to avoid duplication of effort and to

15  delegate specific tasks to lower-level attorneys where appropriate.  See Edelson Decl. ¶ 21.

16  However, the Court is not persuaded that this case warrants an upward departure from the

17  established benchmark.  Moreover, the difference between the adjusted lodestar figure and the

18  percentage method is not significant enough to alter the ultimate fee award.  See In re HP Inkjet

19  Printer Litig., 716 F.3d 1173, 1190 (9th Cir. 2013) (it is not necessary for the fee award to be

20  equally justifiable under both the lodestar and the percentage methods, or for the percentage

21  method to be precise when used as a cross-check).

22        Accordingly, the Court finds that $312,500 in attorneys' fees and $26,608.67 in expenses

23  is reasonable.  The Court therefore GRANTS the request in those amounts.

24    **C.    Incentive Awards**

25        "[N]amed plaintiffs, as opposed to designated class members who are not named plaintiffs,

26  are eligible for reasonable incentive payments."  Staton v. Boeing Co., 327 F.3d 938 (9th Cir.

27  2003).  To determine the appropriateness of incentive awards a district court should use "relevant

28

United States District Court
Northern District of California

1    factors includ[ing] the actions the plaintiff has taken to protect the interests of the class, the degree

2    to which the class has benefitted from those actions ... the amount of time and effort the plaintiff

3    expended in pursuing the litigation ... and reasonabl[e] fear[s of] workplace retaliation." Id.

4      Here, Plaintiff seeks an incentive award of $7,500 because Plaintiff devoted her own time

5    and effort in pursuing her claims, both for herself and for the benefit of the class. See Edelson

6    Decl. ¶¶ 29-33.  However, LinkedIn opposes the $7,500 incentive award because Plaintiff was

7    only added as a plaintiff in this litigation after consolidation and only after LinkedIn had already

8    moved to dismiss the first consolidated complaint[4], no written discovery was ever served on her,

9    she did not need to respond to any discovery, she was not deposed, and she did not attend any

10    court hearing or settlement conference. See Dkt. No. 143 at 1-2.  The Court finds LinkedIn's

11    opposition persuasive.  Moreover, in this district, a $5,000 incentive award is presumptively

12    reasonable.  See Chao v. Aurora Loan Services, LLC, No. C 10-3118 SBA, 2014 WL 4421308, at

13    *4 (N.D. Cal. Sept 5, 2014) (noting that "Plaintiffs' … request for a $7,500 incentive award for

14    each representative Plaintiff is above the $5,000 figure which this Court has determined is

15    presumptively reasonable").

16      Accordingly, the Court finds that $5,000 for the named Plaintiff is presumptively

17    reasonable.  The Court GRANTS her request for an incentive award in that amount.

18    **V.**  **OBJECTIONS**

19      The Court now addresses the points raised in the six written objections, keeping in mind

20    that objectors to a class action settlement bear the burden of proving any assertions they raise

21    challenging the reasonableness of a class action settlement. Oregon, 913 F.2d at 581.

22      The objectors have not satisfied this burden.  Several of the objectors complain that the

23    individual settlement amount is too low.  See Dkt. Nos. 137-140, 142.  As explained above,

24    however, data breach victims have generally had difficulty recovering any damages unless they

25    have losses directly attributable to actual identity theft resulting from the breach.  Here, none of

26

27    _____

[4] See Dkt. No. 54.

28    22

Case No.: 5:12-cv-03088-EJD
ORDER GRANTING MOTION FOR FINAL APPROVAL OF CLASS ACTION; GRANTING
MOTION FOR ATTORNEY FEES, COSTS AND INCENTIVE AWARD

United States District Court
Northern District of California

1  the objectors claim they were victims of identity theft; thus, absent the overpayment theory they

2  would not be able to recover damages.  However, class members are able to recover a monetary

3  award even though their exposed information may never have actually been misused.  Further, the

4  $14.81 that each valid claimant is expected to receive represents a significant recovery for

5  settlement of the overpayment claims in light of anticipated recovery at trial of only $5 to $50.

6  Consequently, the objections based on the settlement amount are rejected.  See Shames v. Hertz

7  Corp., No. 07-CV-2174-MMA(WMC), 2012 WL 5392159, *9 (S.D. Cal. Nov. 5, 2012) (rejecting

8  objection based on size of individual settlement recovery because objectors "d[id] not recognize

9  that the damages each class member suffered were themselves very small").

10      Next, several of the objectors complain about the requested attorneys' fees.  See Dkt. 138-

11  140, 144.  These objectors simply assert that the requested fees are excessive, however, without

12  offering any reasons.  Moreover, the Court has adjusted the fees and incentive awards to be

13  consistent with the value of the class benefit, and notes that the approved amounts are consistent

14  with the relevant Ninth Circuit authority.

15      Finally, objectors raise concerns about the *cy pres* component of the settlement.  See Dkt.

16  No. 139.  However, because the settlement fund will be exhausted by payments to class members,

17  the consideration of the *cy pres* provision to the Settlement Agreement is minor.  Regardless of

18  their significance, the Court finds the *cy pres* distributions to be appropriate as their services relate

19  to the purpose of the case.  See Lane, 696 F.3d at 819.

20      For these reasons, the Court is unpersuaded by the objections.  They are each overruled.

21  **VI.   CONCLUSION**

22      Based on the foregoing, the Court rules as follows:

23      1.  Plaintiffs' Motion for Final Approval of Class Action Settlement is GRANTED; and

24  //

25  //

26  //

27  //

28

23

2.  Plaintiffs' Motion for Attorneys' Fees and Costs is also GRANTED.  The Court awards

$312,500 in attorney fees, $26,608.67 in expenses, and $5,000 in service award.

The Clerk shall close this file upon entry of Judgment.

**IT IS SO ORDERED.**

Dated: September 15, 2015



EDWARD J. DAVILA
United States District Judge

Case No.: 5:12-cv-03088-EJD
ORDER GRANTING MOTION FOR FINAL APPROVAL OF CLASS ACTION; GRANTING
MOTION FOR ATTORNEY FEES, COSTS AND INCENTIVE AWARD